UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH URBINATI, JR.,

Plaintiff,

v.

HOWARD LUTNICK, in his official capacity as Secretary of the United States Department of Commerce; and NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION,

Defendants,

-and-

WHALE AND DOLPHIN CONSERVATION, INC.; CENTER FOR BIOLOGICAL DIVERSITY; CONSERVATION LAW FOUNDATION; and DEFENDERS OF WILDLIFE.

Proposed Defendant Intervenors.

26-CV-2884 (VSB) (RFT)

**OPINION AND ORDER**

**ROBYN F. TARNOFSKY, United States Magistrate Judge:**

The Center for Biological Diversity, Conservation Law Foundation, Defenders of Wildlife, and Whale and Dolphin Conservation (together, "Proposed Intervenors") filed a Motion To Intervene as Defendants (the "Motion") (ECF 19). Upon review and consideration of the Motion and supporting papers (ECF 19, 20), Plaintiff Joseph Urbinati, Jr.'s response in opposition to the Motion ("Pl.'s Opp.") (ECF 32), and Proposed Intervenors' reply (ECF 33), the Motion (ECF 19) is DENIED.[1]

---

[1] A motion to intervene is non-dispositive, so I have the authority to rule on the Proposed Intervenors' Motion. *See Chen-Oster v. Goldman, Sachs & Co.*, No. 10-CV-6950 (AT) (JCF), 2016 WL 11645644, at *2 (S.D.N.Y. June 6, 2016); *Grewal v. Cueno*, No. 13-CV-6836 (RA) (HBP), 2014 WL 2095166, at *1-2 (S.D.N.Y. May 20, 2014) ("Because it is a nondispositive motion, a Magistrate Judge can rule on a motion to intervene and is not limited to recommending a disposition.").

**I.**

## FACTUAL BACKGROUND

### A. North Atlantic Right Whale and NOAA's Vessel Speed Rule

The North Atlantic right whale is a critically endangered species whose population has declined from an approximate high of 490 whales in 2010 to roughly 380 in 2024. (*See* ECF 20, Proposed Intervenors' Mem. at 3-6) Vessel strikes and fishing-gear entanglement are the only documented causes of mortality among right whales that survive their first year of life. (*See id.* at 1.) In 2017, the National Oceanic and Atmospheric Administration ("NOAA"), Fisheries Division, designated an ongoing Unusual Mortality Event ("UME") for the right whale, which by 2026 affected more than 20 percent of the population, including 43 confirmed deaths, 40 serious injuries, and 87 additional morbidities. (*See id.* at 4)

In 2008, NOAA enacted the Vessel Speed Rule (the "Rule") under the Marine Mammal Protection Act ("MMPA") and the Endangered Species Act ("ESA"), codified at 50 C.F.R. § 224.105. (*See* ECF 1, Compl. ¶¶ 4, 30-35; ECF 20, Proposed Intervenors' Mem. at 7.) The Rule established seasonal management areas along the Atlantic seaboard where vessels sixty-five feet or longer must travel at ten knots or less at specified times of year ("Seasonal Management Areas"). (*See* ECF 1, Compl. ¶ 6; ECF 20, Proposed Intervenors' Mem. at 8.) The Rule originally contained a five-year sunset clause but was made permanent in December 2013, after NOAA determined that the justification for the restrictions remained applicable. (*See* ECF 20, Proposed Intervenors' Mem. at 8-9.) A 2020 NOAA report found that right whale mortalities and serious

injuries from vessel-strikes declined from 12 to eight in the decade following the Rule's implementation, while estimating that the Rule imposes industry compliance costs between $28.3 and $39.4 million annually. (*See id.* at 9.)

NOAA proposed expanding the Rule's scope in 2022 but withdrew that proposal in January 2025. (*See id.* at 9-10.) On March 4, 2026, NOAA published an advance notice of proposed rulemaking in the Federal Register, requesting public comment on a possible deregulatory action that would replace the current seasonal speed restrictions with alternative management measures; the goal of these changes would be to reduce what NOAA termed unnecessary regulatory and economic burdens. (*See* ECF 1 Compl. ¶ 9; ECF 20, Proposed Intervenors' Mem. at 10; ECF 33, Proposed Intervenors' Reply at 10-11.) Plaintiff alleges that the Rule imposes approximately $116 million in annual economic costs and cites NOAA data reflecting only four right whale deaths and four serious injuries attributable to vessel strikes between 2009 and 2018. (*See* ECF 1, Compl. ¶¶ 5, 8.)

**B. The Underlying Enforcement Action Against Plaintiff**

Urbinati owns the M/V Michele My Belle, a vessel exceeding sixty-five feet in length. (*See* ECF 1, Compl. ¶ 15.) In November 2022, the vessel was relocated from New York to Florida under the control of a licensed captain; Plaintiff was not aboard during the voyage and did not direct its navigation. (*See id.* ¶ 37.) NOAA alleges that between November 19 and November 21, 2022, Plaintiff's vessel reached average speeds of approximately fourteen to twenty-four knots, exceeding the ten knots limit, over approximately 283 nautical miles within designated Seasonal Management Areas. (*See id.* ¶ 38.) Plaintiff attests that the transit was otherwise uneventful;

the vessel did not encounter any right whales, and no harm to any protected species was alleged. (*See id.* ¶ 39.)

On September 14, 2023, NOAA issued Plaintiff a Notice of Violation and Assessment of Administrative Penalty alleging three violations of the Rule, one for each day of transit, assessing a total penalty of $22,500. (*See id.* ¶ 40.) Plaintiff timely contested the citation, and the matter proceeded before an Administrative Law Judge ("ALJ") on a stipulated record. (*See id.* ¶ 41.) Plaintiff raised statutory and constitutional challenges to the Rule's validity, as well as objections to the proposed penalty before the ALJ, who declined to consider those challenges on the ground that she lacked authority to assess the Rule's legality. (*See id.* ¶ 42.) The ALJ found Plaintiff liable and increased the penalty to $24,000, citing the severity of the violations and Plaintiff's responsibility for the vessel's operation regardless of his absence during the transit. (*See id.* ¶ 43.) Plaintiff sought further review within the agency, but the NOAA administrator did not act within the time permitted, and the ALJ's initial decision therefore became final agency action by operation of law. (*See id.* ¶ 44.)

## II.

## PROCEDURAL HISTORY

Plaintiff filed this action on April 8, 2026, seeking judicial review of NOAA's final decision under the Administrative Procedure Act ("APA"). (*See id.* ¶ 14.) In Count I, Plaintiff alleges that the Rule exceeds NOAA's statutory authority under the MMPA and ESA. (*See id.* ¶¶ 45-54.) In Count II, pleaded in the alternative, Plaintiff alleges that if the Rule is authorized by statute, the relevant statutory provisions delegate legislative power in violation of Article I of the

Constitution. (*See id.* ¶¶ 55-65.) In Count III, Plaintiff alleges that NOAA's adjudication through an internal administrative process rather than an Article III court exercising admiralty jurisdiction was unconstitutional. (*See id.* ¶¶ 66-75.) Plaintiff seeks a declaratory judgment that the ALJ's decision and the resulting civil penalty are unlawful, an injunction against their enforcement, and an award of attorney's fees and costs. (*See id*.)

On May 8, 2026, counsel for Proposed Intervenors conferred with Plaintiff's counsel by email regarding an anticipated motion to intervene. (*See* ECF 19, Mot. at 1.) Plaintiff indicated that he opposed the motion. (*See id.*) On May 11, 2026, Proposed Intervenors filed the Motion for intervention as of right as additional defendants pursuant to Federal Rule of Civil Procedure 24(a), or alternatively for permissive intervention pursuant to Rule 24(b). (*See id.*) The Motion was accompanied by a memorandum of law (ECF 20), which included six supporting declarations (*see* ECF 20, Exs. 1-6) and a Proposed Answer filed concurrently pursuant to Rule 24(c). (*See* ECF 19, Mot. at 2.) As of the date the motion was filed, Defendants had not yet entered an appearance (*see id.* at 1), although they have since answered (ECF 37).

Plaintiff filed his Memorandum of Law in Opposition (ECF 32) on May 26, 2026, and Proposed Intervenors filed their Reply (ECF 33) on June 2, 2026.[2]

---

[2] The parties' briefings draw heavily on a related action where Proposed Intervenors sought intervention in a similar challenge to the Rule brought by a different vessel owner, who was represented by the same counsel as Plaintiff. *See Eubanks v. Lutnick*, No. 25-CV-0614, 2025 WL 2061792, at *1 (M.D. Fla. July 23, 2025). The *Eubanks* court found that Proposed Intervenors had a sufficient interest in the subject matter of that litigation because their interest was direct, substantial, and legally protectable, but denied intervention because Proposed Intervenors had not made an adequate showing that the government's representation of their interests was inadequate. (*See* ECF 33, Proposed Intervenors' Reply at 3-4; ECF 32, Pl.'s Opp. at 5-7, 14, 20;

**III.**

## Analysis

A. Intervention as of Right Under Rule 24(a)(2)

A district court must permit intervention pursuant to Rule 24(a)(2) if the proposed intervenor demonstrates that: (1) the motion is timely, (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action, (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede its ability to protect that interest, and (4) the applicant's interest is not adequately represented by the other parties. *See MasterCard Intern. Inc. v. Visa Intern. Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006).[3] This four-part test originates in the text of Rule 24(a)(2). *See Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96 (2d Cir. 1990). All four requirements must be satisfied for intervention as of right to be granted, and failure to satisfy any element is a sufficient ground to deny the application. *See Floyd v. City of N.Y.*, 770 F.3d 1051, 1057 (2d Cir. 2014).

---

ECF 20, Proposed Intervenors' Mem. at 13 & n.12.) Proposed Intervenors subsequently participated in that action as amici curiae. Plaintiff invokes *Eubanks* as support for denying intervention, and Proposed Intervenors argue that circumstances have materially changed since the *Eubanks* decision, in particular because of NOAA's March 2026 advance notice of proposed rulemaking. (*See* ECF 33, Proposed Intervenors' Reply at 3-4, 10-11; ECF 32, Pl.'s Opp. at 6-7, 14, 20.)

[3] Unless otherwise indicated, this opinion and order omits internal quotation marks, citations, and alterations from quoted text.

1. Timeliness

*a. Legal Standard*

Timeliness is assessed in the district court's discretion based on four factors: (1) the length of time the applicant knew or should have known of its interest before making the motion, (2) prejudice to existing parties resulting from the applicant's delay, (3) prejudice to the applicant if the motion is denied, and (4) the presence of unusual circumstances militating for or against a finding of timeliness. *See MasterCard Intern.*, 471 F.3d at 389).

*b. Application*

Plaintiff does not contest timeliness. Proposed Intervenors filed the Motion on May 11, 2026, 33 days after Plaintiff filed the Complaint on April 8, 2026. (*See* ECF 19, Mot.; ECF 1, Compl.) This short interval weighs in favor of finding the Motion to be timely, particularly since Defendants had not entered an appearance at the time the Motion was filed. (*See* ECF 19, Mot. at 1.) None of the existing parties can plausibly claim prejudice from a four-week delay, and there are no unusual circumstances that would suggest the Motion was untimely: Proposed Intervenors moved to intervene before any substantive proceedings occurred, and there is no suggestion in the record that they were aware of this litigation significantly before they filed. Accordingly, the Court finds that the Motion is timely.

2. Interest

*a. Legal Standard*

The interest asserted must be "direct, substantial, and legally protectable." *Wash. Elec. Co-op.*, 922 F.2d at 97; *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable," will not satisfy this criterion. *Wash. Elec. Co-op.*, 922 F.2d at 97. The proposed intervenor's interest cannot be a general policy or advocacy interest that is untethered to the specific incident at issue in the case. *See Floyd v. City of New York*, 302 F.R.D. 69, 100-01 (S.D.N.Y.) (denying intervention to police unions asserting a reputational interest in stop-and-frisk litigation on the ground that the asserted interest did not belong to the unions and was too indirect to be colorable), *aff'd in part relevant*, *appeal dismissed in part*, 770 F.3d 1051 (2d Cir. 2014); *In re Franklin Nat'l Bank Secs. Litig.*, 92 F.R.D. 468, 470-71 (E.D.N.Y. 1981) (denying intervention as of right to a nonprofit consumer organization whose generalized interest in banking matters was too removed from the specific transaction at issue), *aff'd sub nom. F.D.I.C. v. Ernst & Ernst*, 677 F.2d 230 (2d Cir. 1982).

This factor is weighted toward inclusion rather than exclusion. *See XL Specialty Ins. Co. v. Lakian*, 632 Fed. App'x 667, 669 (2d Cir. 2015). Rule 24(a)(2) also does not require an "intervenor to identify a narrow interest amounting to a legal entitlement"; it only requires "an

interest relating to the property or transaction which is the subject of the action." *N.Y.C. Policing*, 27 F.4th at 801.

*b. Application*

Proposed Intervenors assert two connected interests. First, they claim an interest in the survival and recovery of right whales so that their members may view, study, and photograph the species. (*See* ECF 20, Proposed Intervenors' Mem. at 13.) Second, they claim an organizational interest in protecting the Rule, based on decades of advocacy for the Rule's creation and defense. (*See id.* at 13-16; ECF 33, Proposed Intervenors' Reply at 1-3.)

Plaintiff responds that neither asserted interest is sufficiently direct or substantial to satisfy Rule 24(a)(2). (*See* ECF 32, Pl.'s Opp. at 9.) Plaintiff asserts that Proposed Intervenors have no direct interest in the civil penalty levied against him, which is the subject of this action and which will be paid into NOAA's asset forfeiture fund regardless of Proposed Intervenors' involvement. (*See id.*) Plaintiff acknowledges that Proposed Intervenors may have an interest in the right whale population but contends that that any such interest is at most indirect in relation to the subject of this action. (*See id.*) He further explains that any such interest becomes colorable only upon a sequence of downstream contingencies: Plaintiff prevails on the merits, and NOAA rescinds or narrows the Rule as a result, which alters vessel navigation practices and causes increased strike mortality for right whales and ultimately diminishes Proposed Intervenors' ability to observe the species. (*See Id*. at 9-10 (citing *United States v. City of N.Y.*, 198 F.3d 360, 365 (2d Cir. 1999) and *Wash. Elec. Co-op.*, 922 F.2d at 97).)

Proposed Intervenors respond that Plaintiff's argument mischaracterizes both the applicable standard and the nature of this action. (*See* ECF 33, Proposed Intervenors' Reply at 1.) They explain that the Complaint ties the validity of Plaintiff's citation directly to the validity of the Rule, which Plaintiff asserts (i) exceeds NOAA's statutory authority and, alternatively, (ii) was enacted pursuant to statutes that violate the nondelegation doctrine. (*See* ECF 1, Compl. ¶¶ 45-65; ECF 33, Proposed Intervenors' Reply at 2.) Proposed Intervenors argue that because Plaintiff claims that the challenge to his penalty is inseparable from a challenge to the Rule's statutory and constitutional validity, their interest in defending the Rule is more than collaterally related to Plaintiff's suit and is directly and substantially implicated by this litigation. (*See* ECF 33, Proposed Intervenors' Reply at 1-3.)

Proposed intervenors also contend that Rule 24(a)(2) requires intervenors to have an interest relating to the property or transaction that is the subject of the action, not a property interest or a legal entitlement in the action. (*See id.* at 4.) Proposed Intervenors note that courts have consistently found that conservation organizations can hold a legally protectable interest in defending regulations they have long supported. (*See id.* at 2-4 (citing *Great Atl. & Pac. Tea Co. v. Town of E. Hampton*, 178 F.R.D. 39, 42 (E.D.N.Y. 1998); *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010); and *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995)).) Proposed Intervenors distinguish *City of New York* and *Washington Electric Co-operative* on the ground that those cases involved interests collateral to or contingent upon matters outside the scope of the litigation, whereas in this action the validity

of the Rule is squarely presented by Plaintiff's own claims. (*See* ECF 33, Proposed Intervenors' Reply at 4-5.)

The Court agrees with Proposed Intervenors that their asserted interest is sufficient for intervention under Rule 24(a)(2). Their interests relate directly to the subject of Plaintiff's claims, unlike the interests of the environmental group that sought to intervene in *City of New York*, whose interests were related only collaterally to the claims in that action. *See* 198 F.3d at 365. Plaintiff challenges both the penalty assessed against him and the statutory and constitutional validity of the Rule, and he expressly acknowledges that "the citation's validity turns on the validity of the Speed Rule." (ECF 1, Compl. ¶ 46.) And Proposed Intervenors' interest is not indirect or contingent on subsequent occurrences as was the case in *Washington Electric Co-operative*, where the proposed intervenor's interest depended on a subsequent and independent determination by a state regulatory board. *See* 922 F.2d at 97. Proposed Intervenors' interest in the validity of the Rule turns on the same legal questions that must be resolved when Plaintiff's claims are decided by this Court, not on questions to be resolved in later or separate proceedings.

The Court is mindful that this factor is weighted toward inclusion. *See N.Y.C. Policing*, 27 F.4th at 801. Given the direct overlap between the legal questions presented in this action and the interests Proposed Intervenors have advocated to protect, the Court finds that Proposed Intervenors have satisfied the interest element of Rule 24(a)(2).

3. Impairment

*a. Legal Standard*

A proposed intervenor must demonstrate that disposition of the proceeding without its involvement would impair or impede its ability to protect its interest. *See Wash. Elec. Co-op.*, 922 F.2d at 98. Where a proposed intervenor retains the ability to pursue its interest through a separate, independent action, courts are less likely to find impairment. *See id.* (affirming denial of intervention where the proposed intervenor could bring its own separate lawsuits to vindicate its interests).

*b. Application*

Proposed Intervenors argue that denial of intervention would impair their ability to protect their asserted interests because this action requires the Court to resolve the legality and constitutional validity of the Rule and its enforcement. (*See* ECF 20, Proposed Intervenors' Mem. at 16-17.) They assert that a ruling in Plaintiff's favor on the statutory or constitutional claims would jeopardize the vessel strike protections the Rule affords the right whale, which in turn would damage their members' interests in the species, and that a ruling in Plaintiff's favor would also harm the organizations' interest in the rulemaking authority Congress delegated to NOAA under the MMPA and ESA. (*See id*.) Proposed Intervenors rely on *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983), where the court found that a pending decision would affect the movant's ability to protect its interest in preserving a species of bird and its habitat, and on *WildEarth Guardians*, 604 F.3d at 1199, for the conclusion that impairment may

be found regardless of a prospective intervenor's ability to participate in future litigation, because of the potential stare decisis effect of a judgment. (*See* ECF 33, Proposed Intervenors' Reply at 5-6.) Proposed Intervenors further argue that they need show only that disposition of the action may, as a practical matter, impair or impede their ability to protect their interest, not that this action represents their last opportunity to advocate on behalf of the right whale or the Rule. (*See id.* at 6-7 (citing *N.Y.C. Policing*, 27 F.4th at 799).)

Plaintiff contends that Proposed Intervenors "can vindicate their environmental interests outside of this litigation." (ECF 32, Pl.'s Opp. at 12.) Should NOAA repeal or revise the Rule following an adverse ruling in this action, Plaintiff argues that Proposed Intervenors are still able to challenge any future rulemaking under the APA, as they have done in previous litigation over the Rule. (*See id.*) Plaintiff suggests that Proposed Intervenors are similarly situated to the environmental group in *City of New York*, which had independent opportunities outside the enforcement action to directly challenge the validity of the agency determination at issue. (*See id.* (citing *City of N.Y.*, 198 F.3d at 366).)

Plaintiff insists that any decision by this Court would not bind Proposed Intervenors in separate litigation but would constitute the law of the case; a ruling would not preclude them from advocating for the Rule, participating in future rulemaking proceedings, or pursuing their own challenge to any future rescission or amendment. (*See id.* at 12-13 (citing *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *Liona Corp. v. PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991)).) Plaintiff also cites *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 199 (2d Cir. 2000), to support the position that the financial burden, delay, or strategic inconvenience of pursuing

an independent lawsuit does not impair or impede an applicant's ability to protect its interest. (*See* ECF 32 Pl.'s Opp. at 12.)

Proposed Intervenors counter that Plaintiff's argument misses the point, in that the relevant question is not whether this Court's decision would formally bind them in a future proceeding, but whether invalidating the Rule would impair their ability to protect their interests by binding Defendants and potentially limiting the enforcement mechanisms Proposed Intervenors have spent decades securing. (*See* ECF 33, Proposed Intervenors' Reply at 5-7 & n.3.) Proposed Intervenors distinguish *Holocaust Victim Assets* on the ground that it addressed the burden of pursuing separate litigation, not the prejudice from disposition of the action. (*See id.* at 7-8.)

Plaintiff has the better of the argument. Proposed Intervenors have not shown that disposition of this action without their participation would substantially impair or impede their ability to protect their asserted interest. As in *City of New York*, Proposed Intervenors retain an avenue outside this action for protecting their interest. Should this Court rule for Plaintiff on his statutory claim and should NOAA subsequently revise or rescind the Rule, Proposed Intervenors may provide their input in the subsequent rulemaking process. If dissatisfied with the rulemaking outcome, they may bring their own action under the APA, as they have done in other cases. *See City of N.Y.*, 198 F.3d at 366; *Wash. Elec. Co-op.*, 922 F.2d at 98. Any ruling in this action would not bind Proposed Intervenors in later litigation. *See Camreta*, 563 U.S. at 709 n.7; *Liona Corp.*, 949 F.2d at 592. Just because such a scenario would impose litigation costs and would require Proposed Intervenors to proceed without having shaped the record in this action

does not establish impairment under Rule 24(a)(2). *See Holocaust Victim Assets*, 225 F.3d at 199.

Proposed Intervenors' argument that a ruling invalidating the Rule on constitutional grounds could carry a stare decisis effect that would complicate their ability to defend any future rulemaking, even in the absence of formal preclusion, likewise falls short. Even if such a ruling might carry persuasive weight in future proceedings, Proposed Intervenors would remain able to argue that this Court's constitutional analysis was mistaken or distinguishable; the availability of that avenue is sufficient to defeat a showing of impairment. Moreover, the sequence of events on which Proposed Intervenors' asserted impairment depends – a ruling in Plaintiff's favor, a subsequent agency decision to rescind or narrow the Rule, and changed vessel conduct that increases strike risk to the species – is the same kind of downstream contingency that *Washington Electric Co-operative* held was insufficient to establish a direct and substantial stake in the litigation. *See* 922 F.2d at 97-99.

Accordingly, the Court finds that Proposed Intervenors have not satisfied the impairment element of Rule 24(a)(2).

4. Adequacy of Representation

*a. Legal Standard*

Lastly, the proposed intervenor must show that its interest is not adequately represented by an existing party; the burden of making this showing is generally described as minimal. *See Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *Wash. Elec. Co-*

*op.*, 922 F.2d at 98. Where the proposed intervenor and an existing party have identical interests, adequate representation is presumed, and the proposed intervenor bears the burden of overcoming the presumption. *See Trbovich*, 404 U.S. at 538. A different motive for litigating does not establish inadequate representation. *See Wash. Elec. Co-op.*, 922 F.2d at 98. ("[A] putative intervenor's interest is not inadequately represented merely because its motive to litigate is different from that of a party to the action.").

Courts apply a heightened version of this standard when the government litigates in a sovereign or parens patriae capacity, which requires a strong affirmative showing of inadequate representation, through evidence of collusion, adversity of interest, nonfeasance, or incompetence. *See United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 985, 987 (2d Cir. 1984); *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 180 (2d Cir. 2001). The parens patriae doctrine is not triggered merely because a governmental entity is a party in its official capacity; it applies specifically to enforcement actions brought by government plaintiffs and does not apply to actions where a government entity is defending the legality of its actions or the validity of its regulations. *See Herdman v. Town of Angelica*, 163 F.R.D. 180, 189-90 (W.D.N.Y. 1995) (citing *Hooker*, 749 F.2d at 987).

*b. Application*

Plaintiff argues that this action should be viewed as an enforcement action brought by the government in its sovereign capacity, even though it is styled as a suit brought by Plaintiff against Defendants. (*See* ECF 32, Pl.'s Opp. at 13-14.) Plaintiff notes that NOAA initiated the underlying administrative enforcement proceedings, prosecuted the alleged violations, and is

defending the resulting agency decision in this Court. (*See id.* at 14.) He argues that the government therefore represents the same environmental interests that Proposed Intervenors seek to assert. (*See id.*) On that basis, Plaintiff contends that the heightened standard applies and that Proposed Intervenors must make a strong affirmative showing of inadequacy to overcome any presumption that the government adequately represents their interests. (*See id.* at 13-15.)

Proposed Intervenors counter that Defendants are not litigating as parens patriae and that the heightened standard therefore does not apply. (*See* ECF 33, Proposed Intervenors' Reply at 8-9.) They argue that parens patriae litigation is limited to enforcement actions brought by government plaintiffs and that here, a private plaintiff sued the government to challenge the legality of its own regulation and the enforcement action taken under it. (*See id.* at 9 (citing *Herdman*, 163 F.R.D. at 190).) They note that *Herdman* differentiates cases where the government sues on behalf of its citizens from cases where government officials are sued in their official capacities over the validity of their conduct. (*See id.* (citing *United States v. Palermino*, 238 F.R.D. 118, 123 (D. Conn. 2006)).) Proposed Intervenors conclude that they need to satisfy only the minimal burden of demonstrating that Defendants' representation of their interests may be inadequate, not the heightened *Hooker* showing. (*See id.* at 8-9.)

The Court need not resolve that dispute to decide the Motion, because Proposed Intervenors have failed to make even the more modest showing. To rebut the presumption of adequate representation when a proposed intervenor and an existing party share the same ultimate objective, *see Wash. Elec. Co-op.*, 922 F.2d at 98, Proposed Intervenors point to

NOAA's March 2026 advance notice of proposed rulemaking, which suggests possible deregulatory action that would replace the Rule's seasonal speed restrictions with "alternative management areas" and sought public comment on the topic. (*See* ECF 20, Proposed Intervenors' Mem. at 17-20; ECF 33, Proposed Intervenors' Reply at 10-11.) Proposed Intervenors argue that this proposal creates doubt regarding the government's willingness to vigorously defend the Rule in this litigation. (*See* ECF 33, Proposed Intervenors' Reply at 10-12.) Specifically, they point to the NOAA's characterization of the Rule's burdens as "unnecessary" as undermining the government's defense of the Rule as necessary and appropriate, and they contend that NOAA's need to balance safety and economic considerations demonstrates institutional interests different from Proposed Intervenors' narrower interest in the Rule's survival. (*See Id.*) Proposed Intervenors also assert that their prior advocacy and litigation directed at NOAA regarding right whale protections could create friction, which further suggests that the government will not adequately represent their interests. (*See* ECF 20, Proposed Intervenors' Mem. at 18-20.)

Plaintiff responds that an agency's consideration of future amendments to a rule does not establish that the agency will fail to defend the current rule or an enforcement action brought to litigate the rule's present validity. (*See* ECF 32 Pl.'s Opp. at 17.) Plaintiff notes that Proposed Intervenors' submissions outline what the government "may" do, which Plaintiff says reveals the speculative nature of their claim of inadequate representation. (*See id.*) He further contends that disagreements over litigation strategy or how to balance competing regulatory considerations do not establish inadequate representation. (*See id*. at 16 (citing *City of N.Y.*, 198

F.3d at 367) ("[R]epresentation is not inadequate simply because the applicant and the existing party have different views of the facts or the applicable law.") Plaintiff also notes, and Proposed Intervenors acknowledge, that another federal court recently rejected materially similar arguments by these same organizations in *Eubanks*, a case Proposed Intervenors rely on in their briefing. (*See* ECF 32, Pl.'s Opp. at 14, 20; ECF 33, Proposed Intervenors' Reply at 3-4.)

The Court agrees with Plaintiff that Proposed Intervenors have not made a sufficient showing of inadequate representation under the ordinary Rule 24(a)(2) standard, let alone the heightened *Hooker* standard, to the extent it applies. NOAA's advance notice of proposed rulemaking reflects that the agency is considering revising the Rule in the future through a separate process subject to notice-and-comment procedures. Proposed Intervenors have identified nothing in the record to suggest that Defendants intend to concede the validity of Plaintiff's statutory, nondelegation, or Article III claims, or that Defendants will decline to defend the Rule and the enforcement action. That an agency acknowledges that a regulation imposes economic costs and has an interest in weighing those costs against the regulation's benefits is not evidence that the agency will fail to defend the regulation's statutory and constitutional validity in litigation.

Nor does Proposed Intervenors' history of policy disagreement and occasional litigation with NOAA over the appropriate scope of right whale protections establish the requisite collusion, adversity of interest, nonfeasance, or incompetence that *Hooker* and *Butler* require, let alone the more modest requirements about adequacy that Rule 24(a)(2) demands in the ordinary case. *See Hooker*, 749 F.2d at 987; *Butler*, 250 F.3d at 180; *City of N.Y.*, 198 F.3d at 367

(explaining that representation is not inadequate simply because the applicant and an existing party have different views of the facts or the applicable law). This conclusion is reinforced by the recent *Eubanks* decision, which denied intervention as of right in comparable circumstances involving the same proposed intervenors and Rule and materially similar arguments regarding NOAA's regulatory posture. *See Eubanks*, No. 25-CV-0614, 2025 WL 2061792, at *1. The reasoning in *Eubanks* is persuasive, and Proposed Intervenors have identified no significantly distinct circumstances that would lead to Court to a different conclusion as to Defendants' adequacy.

Accordingly, the Court finds that Proposed Intervenors have failed to demonstrate that their interests are inadequately represented by the existing Defendants.

B. Permissive Intervention Under Rule 24(b)

1. Legal Standard

Under Rule 24(b), permissive intervention requires a proposed intervenor to demonstrate: (1) a timely motion, (2) a claim or defense that shares a common question of law or fact with the main action, and (3) that the intervention will not unduly delay or prejudice the adjudication of the original parties' rights; the words claim or defense in this context are not read in a technical sense but require only some interest on the part of the applicant. *See Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 488 (S.D.N.Y. 2011). A proposed intervenor satisfies the common-question requirement where even "a single common question of law or fact is involved, despite factual differences between the parties." *See Miller v.*

*Silbermann*, 832 F. Supp. 663, 673 (S.D.N.Y. 1993). If a proposed intervenor establishes a common question, the requirement of the rule has been satisfied, and the court has discretion to allow intervention. *See In re Ivan F. Boesky Sec. Litig.*, 129 F.R.D. 89, 95 (S.D.N.Y. 1990).

In addition to delay and prejudice, courts consider "the nature and extent of the intervenor's interests," the degree to which those interests are "adequately represented by other parties," and whether "parties seeking intervention will significantly contribute to the full development of the underlying factual issues and to the just and equitable adjudication of the legal questions presented." *See Dorsett v. Cnty. of Nassau*, 283 F.R.D. 85, 90 (E.D.N.Y. 2012) (quoting *U. S. Postal Serv. v. Brennan*, 579 F.2d 188, 191-92 (2d Cir. 1978)). This test is flexible, and courts generally look at all the relevant factors rather than focusing narrowly on any one of them. *See id*. The court enjoys broad discretion in ruling on a motion for permissive intervention, and a denial of permissive intervention is reviewed on appeal with "particular[ ] deferen[ce]" and has "virtually never been reversed." *See AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005); *Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 876 (2d Cir. 1984); *Floyd*, 770 F.3d at 1062 n.38.

2. Analysis

As noted above, there is no dispute as to whether the motion for intervention by Proposed Intervenors was timely. At issue is whether Proposed Intervenors share a common question of law or fact with any of the current parties. I conclude that they do. Proposed Intervenors have the same underlying objective as Defendants – defending the Rule. Proposed

Intervenors suggest that they want to oppose Plaintiff's claims and requests for relief, not assert any cross or counterclaims. (*See* ECF 20, Proposed Intervenors' Mem. at 21.)

The Court's conclusion that Defendants adequately represent Proposed Intervenors' interests in this litigation weighs against permissive intervention. *See H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) (including "the degree to which [the intervenor's] interests are adequately represented by other parties" among the "relevant factors" to consider in adjudicating a request for permissive intervention). However, this factor is not dispositive, because Rule 24(b) does not require a movant seeking permissive intervention to show inadequacy of representation. *See Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, No. 17-CV-0957 (ADS), 2017 WL 6459464, at *13 (E.D.N.Y. Dec. 15, 2017) ("While many courts have denied permissive intervention where there was adequate representation, other courts have found permissive intervention warranted even where there was adequacy of representation.") Rather, "while existing adequate representation may militate against allowing permissive intervention, such intervention may still be appropriate if the addition of the intervenors will assist in the just and equitable adjudication of any of the issues between the parties." *United States v. N.Y.C. Housing Auth.*, 326 F.R.D. 411, 418 (S.D.N.Y. 2018).

The addition of Proposed Intervenors would not aid in the "just and equitable adjudication" of the issues in this case, *N.Y.C. Housing Auth.*, 326 F.R.D. at 418. Proposed Intervenors posit that their intervention "will cause no undue delay or prejudice to the existing parties" and that their participation would "helpfully provide this Court with a fuller picture of the issues at stake in this litigation." (ECF 20, Proposed Intervenors' Mem. at 21-22.) However,

Plaintiff and Defendants are fully equipped to provide the information necessary for the Court to consider the relevant statutes and facts of the case.

The Court shares Defendants' concern that "allowing four additional organizational parties to intervene would unnecessarily complicate and prolong litigation," (ECF 32, Pl.'s Opp. at 19.) Even if Proposed Intervenors "work[ed] with the other parties toward the efficient adjudication of the case," as they explain they would do (ECF 20, Proposed Intervenors' Mem. at 21), their inclusion as defendants would still inevitably complicate the proceedings and unnecessarily delay adjudication of a case that the existing Defendants can defend. No matter how efficient and responsive the Proposed Intervenors would be, four additional parties in this case would lead to inefficiencies.

Plaintiff suggests that the Court could permit Proposed Intervenors to participate in this matter as amicus curiae rather than as intervenors, as they did in *Eubanks*. (*See* ECF 32, Pl.'s Opp. at 19-20.) "It is well-established that a district court has broad discretion to grant or deny an appearance as amicus curiae in a given case." *Picard v. Greiff*, 797 F. Supp. 2d 451, 452 (S.D.N.Y. 2011); *United States v. Adams*, 348 F.R.D. 408, 409 (S.D.N.Y. 2025) (characterizing the appointment of amicus curiae as an exercise of the court's "inherent authority"). Proposed Intervenors' perspectives could be useful to the Court's consideration of this case; the Court will allow them to participate as amicus curiae and grants Proposed Intervenors leave to file amicus briefs. *See City of Syracuse, N.Y. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 20-CV-6885 (GHW), 2021 WL 23326, at *5 (S.D.N.Y. Jan. 2, 2021) ("[T]he alternative to intervention is that Proposed Intervenors participate as amicus curiae.") Proposed Intervenors

would not participate in discovery, make motions, or lodge appeals. The Court believes this approach strikes an appropriate balance that respects Proposed Intervenors' interest in this litigation while also ensuring the efficient administration of this dispute.

**CONCLUSION**

For the foregoing reasons, Proposed Intervenors' motion to intervene (ECF 19) is DENIED. Proposed Intervenors may file briefs in support of or opposition to motions made by the parties as amicus curiae. Any such amicus brief in support of a motion filed by Defendants shall be filed within 14 days of the filing of such motion, with any reply brief being due at the same time as Defendants' reply; any such amicus brief in opposition to a motion filed by Plaintiff shall be due seven days after Defendants' opposition brief is due. The Clerk of Court is respectfully requested to terminate ECF 19.

DATED: August 27, 2026
New York, NY

SO ORDERED.

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**