**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH URBINATI, JR.,<br><br>Plaintiff,<br><br>v.<br><br>HOWARD LUTNICK, *et al.*,<br><br>Defendants,<br><br>and<br><br>WHALE AND DOLPHIN CONSERVATION, INC.; CENTER FOR BIOLOGICAL DIVERSITY; CONSERVATION LAW FOUNDATION; and DEFENDERS OF WILDLIFE,<br><br>Defendant-Intervenors (proposed). | No. 1:26-cv-02884 (VSB) (RFT)<br><br>**CONSERVATION GROUPS' MEMORANDUM IN SUPPORT OF SECOND MOTION TO INTERVENE AS DEFENDANTS** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

SUMMARY OF RECENT EVENTS ..... 3

I. Executive Order 14430 and Presidential Statement ..... 3

II. NOAA's Reinterpretation of "Take" Under the ESA ..... 5

LEGAL STANDARD ..... 7

ARGUMENT ..... 8

I. CONSERVATION GROUPS ARE ENTITLED TO INTERVENE AS OF RIGHT ..... 9

A. Conservation Groups' Second Motion is Timely ..... 9

B. Conservation Groups Have Substantial Interests at Stake ..... 12

C. The Disposition of This Case May Impair Conservation Groups' Ability to Protect Their Interests ..... 12

D. Conservation Groups' Interests May Not Be Adequately Represented by Any Existing Party ..... 17

II. ALTERNATIVELY, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION ..... 20

CONCLUSION ..... 22

CERTIFICATE OF COMPLIANCE ..... 1

## TABLE OF AUTHORITIES

### Cases

*335-7 LLC v. City of New York*,
No. 20- CV-1053, 2020 WL 3100085 (S.D.N.Y. June 11, 2020) .............................. 21

*Allco Fin. Ltd. v. Etsy*,
300 F.R.D. 83 (D. Conn. 2014) .......................................................................... 20, 22

*Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*,
515 U.S. 687 (1995) ......................................................................................... 5

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
250 F.3d 171 (2d Cir. 2001) ............................................................................. 10, 18

*Certified Multi-Media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp. LLC*, No. 14-CV-5227,
2015 WL 5676786 (E.D.N.Y. Sep. 24, 2015) ...................................................... 14, 19

*Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency*,
542 F. Supp. 3d 232 (S.D.N.Y. 2021) ................................................................. 9

*Eubanks v. Lutnick*,
No. 8:25-CV-614, 2025 WL 2061792 (M.D. Fla. July 23, 2025) ............................ 2, 6

*Floyd v. City of New York*,
770 F.3d 1051 (2d Cir. 2014) ............................................................................ 10

*Green v. Biden*,
No. 24-CV-1975, 2024 WL 4932751 (E.D.N.Y. Dec. 2, 2024) .................................. 21

*In re N.Y.C. Policing During Summer 2020 Demonstrations,*
27 F.4th 792 (2d Cir. 2022) ............................................................................... 8, 12, 13

*In re N.Y.C. Policing During Summer 2020 Demonstrations*,
No. 20-CV-8924 (CM)(GWG), 2022 WL 2045654 (S.D.N.Y. June 7, 2022) .......... 7, 8

*In re Puda Coal Sec. Inc. Litig.*,
No. 11 CIV. 2598 (KBF), 2014 WL 12824302 (S.D.N.Y. Apr. 7, 2014) ..... 7, 8, 11, 12

*Kane Cnty., Utah v. United States*,
928 F.3d 877 (10th Cir. 2019) ............................................................................ 7, 13

*Kleissler v. U.S. Forest Serv.*,
157 F.3d 964 (3d Cir. 1998) .......... 19

*Loper Bright v. Raimondo*,
603 U.S. 369 (2024) .......... 9

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 9

*Marino v. Ortiz*,
484 U.S. 301 (1998) .......... 15

*MasterCard Intern. Inc. v. Visa Intern. Serv. Ass'n, Inc.*,
471 F.3d 377 (2d Cir. 2006) .......... 8, 10, 11

*Microsystems Software, Inc. v. Scandinavia Online AB*,
226 F.3d 35 (1st Cir. 2000) .......... 15

*Nat. Res. Def. Council, Inc. v. N.Y. State Dep't of Env't Conservation*,
834 F.2d 60 (2d Cir. 1987) .......... 19

*Nat. Res. Def. Council v. U.S. EPA*,
808 F.3d 556 (2d Cir. 2015) .......... 14

*New York Pub. Int. Rsch. Grp., Inc. v. Regents of Univ. of State of N.Y.*,
516 F.2d 350 (2d Cir. 1975) .......... 18

*Olin Corp. v. Lamorak Ins. Co.*,
325 F.R.D. 85 (S.D.N.Y. 2018) .......... 10, 20

*Ransmeier v. Mariani*,
486 F. App'x 890 (2d Cir. 2012) .......... 8

*State of Texas v. Interior*,
No. 7:24-cv-00233 (W.D. Tex.) (June 3, 2026) .......... 17

*Texas v. U.S. Dep't of Interior*,
No. 25-50747, 2026 WL 2672757 (5th Cir. Sept. 11, 2026) .......... passim

*Texas v. U.S. Dep't of Interior*,
No. 7:23-cv-00047 (W.D. Tex. 2025) .......... 16

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) .......... 17

*U.S. Postal Serv. v. Brennan*,
579 F.2d 188 (2d Cir. 1978) .......... 20

*United States v. N.Y.C. Hous. Auth.*,
326 F.R.D. 411 (S.D.N.Y. 2018) .......... 21, 22

*United States v. Pitney Bowes, Inc.*,
25 F.3d 66 (2d Cir. 1994) .......... 8, 10, 13, 14

**Rules**

5 U.S.C. 706(2) .......... 14

91 Fed. Reg. 9474 (Feb. 26, 2026) .......... 16

91 Fed. Reg. 43300 (July 26, 2026) .......... 5

91 Fed. Reg. 60293 (Sep. 22, 2026) .......... 3, 4, 18

Fed. R. Civ. P. 24(a) .......... passim

Fed. R. Civ. P. 24(b) .......... 3, 20

**Other Authorities**

NOAA Fisheries, *Understanding Laws and NOAA Fisheries*, https://www.fisheries.noaa.gov/insight/understanding-laws-and-noaa-fisheries (last visited Oct. 13, 2026) .......... 5

The White House, *President Trump Participates in a Rose Garden Dinner, Sep. 17, 2026*, YOUTUBE, https://www.youtube.com/watch?v=vUV87DEi1yA (streamed live on Sep. 17, 2026) .......... 4, 18

U.S. Department of Commerce, *President Trump Signs Landmark Executive Order Restoring American Saltwater Angling and Recreation,* PRESS RELEASE, (Sep. 17, 2026), https://www.commerce.gov/news/press-releases/2026/09/president-trump-signs-landmark-executive-order-restoring-american .......... 4

## INTRODUCTION

Whale and Dolphin Conservation, Inc., Center for Biological Diversity, Conservation Law Foundation, and Defenders of Wildlife (Conservation Groups) respectfully file this second motion to intervene as Defendants to safeguard their interests in the survival and recovery of endangered North Atlantic right whales.

Conservation Groups bring this second motion in response to additional evidence that indicates Defendants may no longer adequately represent their interests. On September 17th, 2026: (1) the president issued Executive Order 14430, directing the Secretary of Commerce to suspend, revise, or rescind "regulations that overly burden boaters, anglers, and outdoor businesses" "[w]ithin 30 days;" and (2) in his public announcement of the executive order, the president stated that 10 knot vessel speed restrictions are being eliminated. In its press release on the executive order, the U.S. Department of Commerce stated that "[t]he Order establishes concrete timelines for . . . rapid action to suspend or rescind regulations that burden boaters and outdoor businesses."

Within a week of the order's issuance, Conservation Groups learned that the National Oceanic and Atmospheric Administration (NOAA) had circulated an internal memo regarding a new statutory interpretation of the scope of the Endangered Species Act (ESA)'s "take" prohibition, stating that as an example "[a] vessel that inadvertently strikes a whale has not taken it, because the vessel's

course was not set against the whale." Ex. 1, Attach. A at 3 of 4.[1]

The recent executive order, presidential statement, Commerce press release, and NOAA "take" memo represent additional evidence of an unprecedented departure from the federal government's longstanding commitment to protecting the highly endangered right whale from deadly vessel strikes, one of the two major threats to its survival and recovery, via the 2008 Vessel Speed Rule. The government can no longer be presumed to represent the general interest—and Conservation Groups' specific interests—in right whale conservation at risk in this case. This additional evidence demonstrates that an adverse outcome in this case could impair or impede Conservation Groups' ability to protect their interests.

As background, Plaintiff seeks review of his $24,000 civil penalty issued by NOAA for knowingly violating the 2008 Vessel Speed Rule. He challenges NOAA's statutory authorities under the ESA and Marine Mammal Protection Act (MMPA) to protect marine mammals from being taken by vessel strikes by implementing necessary and appropriate management measures. He also asserts constitutional challenges to the Speed Rule. If he succeeds on any of his statutory or constitutional

---

[1] On September 25, 2026, in a companion case before the Middle District of Florida, *Eubanks v. Lutnick*, No. 8:25-cv-00614, Defendants filed a notice stating that they are considering whether the U.S. Fish and Wildlife Service (FWS) and NOAA Fisheries' issuance of a July 14, 2026, joint final rule rescinding the regulatory definitions of "harm" in the ESA's statutory definition of "take" (effective September 14, 2026) may affect Defendants' arguments in that case. *See* Fed. Defs.' Notice of ESA Definition of Harm, *Eubanks v. Lutnick*, No. 8:25-CV-614-CEH-AAS (Sept. 25, 2026), ECF No. 71. The Court there has ordered the parties to file supplemental briefs on their views, now due November 9, 2026. *Id*. Order, ECF No. 72; *id*, Endorsed Order Granting Mot. for Ext., ECF No. 74.

challenges, the legal foundations of this Rule will be called into serious question.

On May 11, 2026, Conservation Groups filed their initial motion to intervene. ECF No. 19 (Notice of Mot. To Intervene). Following briefing this Court denied the motion on August 27, 2026. ECF No. 42 (Op. and Order). The Court found Conservation Groups' motion was timely and their interests are sufficient for intervention under Rule 24(a)(2), but that there was insufficient evidence of inadequate representation by the federal government or that disposition of the case would substantially impair their ability to protect these interests. *Id.*

Based on new evidence, Conservation Groups now file a second motion to intervene under Rule 24(a)(2) to protect their direct and legally cognizable interests in the 2008 Vessel Speed Rule. In the alternative, they request permissive intervention under Rule 24(b). For the sake of brevity and to minimize redundancy, this motion incorporates by reference the arguments of Conservation Groups' prior motion to intervene. ECF No. 20 (Mem. in Support of Mot. to Intervene).

## SUMMARY OF RECENT EVENTS

### I. Executive Order 14430 and Presidential Statement

On September 17, 2026, President Trump issued Executive Order 14430 titled "Restoring American Saltwater Angling and Recreation." *Executive Order 14430 of September 17, 2026*, 91 Fed. Reg. 60293 (Sep. 22, 2026). Section 5 of the order ("*Rescission of Regulations that Restrict Marine Infrastructure and Access*") directs the Secretaries of the Interior and Commerce and others to, "[w]ithin 30 days of the date of this order," "take steps to initiate action to suspend, revise, or

rescind regulations that overly burden boaters, anglers, and outdoor businesses." 91 Fed. Reg. at 60294.

During President Trump's Rose Garden address announcing Executive Order 14430, he stated that the Order:

> eliminates absurd federal regulations . . . . The Biden administration tried to bludgeon the boating and maritime industry with a ridiculous boating speed limit of no more than 10 miles per hour . . . . It is crazy . . . . It's unbelievable, 10 miles per hour. But just as I promised you in the campaign, we're eliminating those restrictions and we're doing it immediately. And the American boaters can now once again enjoy the open ocean and you can go slightly faster than ten miles an hour, like 120 miles an hour if you're crazy. You can go as fast as you want. And we have that order. It's all signed, sealed, and delivered. You're all set to have it . . . . We opened it up . . . and you have no restrictions.[2]

The Commerce Department's press release for Executive Order 14430 states that "[t]he Order establishes concrete timelines for . . . rapid action to suspend or rescind regulations that burden boaters and outdoor businesses."[3] This administration's hostility to the 2008 Vessel Speed Rule—a significant departure from previous administrations' (both Republican and Democrat) unwavering support of the Rule since 2008—is new evidence that Defendants may no longer adequately represent Conservation Groups' interests in defending the Rule against Plaintiff's statutory and constitutional challenges.

---

[2] The White House, *President Trump Participates in a Rose Garden Dinner, Sep. 17, 2026*, YOUTUBE, https://www.youtube.com/watch?v=vUV87DEi1yA (streamed live on Sep. 17, 2026).

[3] U.S. Department of Commerce, *President Trump Signs Landmark Executive Order Restoring American Saltwater Angling and Recreation,* PRESS RELEASE, (Sep. 17, 2026), https://www.commerce.gov/news/press-releases/2026/09/president-trump-signs-landmark-executive-order-restoring-american.

## II. NOAA's Reinterpretation of "Take" Under the ESA

On July 14, 2026, NOAA Fisheries[4] and the FWS jointly rescinded the regulatory definitions of the term "harm" in the ESA's statutory definition of "take" that included actions that actually kill or injure endangered wildlife, including by modifying or destroying habitat and thereby interfering with species' life functions. *Rescinding the Definition of "Harm" under the Endangered Species Act*, 91 Fed. Reg. 43300 (July 26, 2026) (Harm Rescission Rule). The rescission took effect on September 14, 2026. *Id.* The rationale presented for the Harm Rescission Rule is that Justice Scalia's narrow interpretation of "take," as presented in his dissent in *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687 (1995), which involved a challenge to the harm regulations, constitutes the "single, best meaning of the statute." 91 Fed. Reg. at 43301.

That same day, NOAA issued an internal agency memorandum titled the "Scope of the ESA's 'take' prohibition following the Harm Rule (91 Fed. Reg. 43300)."[5] Ex. 1, Attach. A. This memo states that, "[u]nder Justice Scalia's interpretation, 'take' reaches only an affirmative act that is intentionally and

---

[4] NOAA Fisheries, an office of NOAA within the Commerce Department, is the primary federal agency responsible for the stewardship of our living ocean resources and the marine habitats on which they rely. NOAA Fisheries, *Understanding Laws and NOAA Fisheries*, https://www.fisheries.noaa.gov/insight/understanding-laws-and-noaa-fisheries (last visited Oct. 13, 2026).

[5] On September 24, 2026, in response to a Freedom of Information Act request, the Center for Biological Diversity received a copy of the memorandum from NOAA General Counsel John Luce to the Alaska, Enforcement, Fisheries and Protected Resources, Northeast, Northwest, Pacific Islands, Southeast, and Southwest Sections ("NOAA Memo"). Ex. 1 ¶ 22, Attach. A (Sakashita Decl.).

purposefully directed at a particular animal." *Id.* at 1 of 4. "In sum, Justice Scalia's interpretation begins with one fundamental point: did the actor intend to act on the animal itself." *Id.* at 2 of 4. As a consequence, "'[t]ake'" requires that "a person must intend to act on an animal and must do so for the purpose of affecting the animal." *Id.* at 3 of 4.[6] It explains that "[w]hen that purpose is absent, there is no take, however serious the resulting injury may be. *A vessel that inadvertently strikes a whale has not taken it, because the vessel's course was not set against the whale*." *Id.* (emphasis added).

This statutory reinterpretation upends more than four decades of NOAA Fisheries's (and FWS's) consistent positions on the meanings of "take" and "harm." While the proper interpretation of the ESA's statutory term "take" is not at issue here, Defendants' drastic change in position is directly relevant to this motion because it brings into question their willingness to defend the 2008 Vessel Speed Rule. In *Eubanks v. Lutnick*, Defendants specifically defended the Rule based on the ESA's general rulemaking authority that empowers them to promulgate regulations protecting against unlawful take. *See* Fed. Defs.' Cross Mot. Summ. J., *Eubanks v. Lutnick*, No. 8:25-cv-00614 (M.D. Fla.), ECF No. 47 at 8, 10, 13–14 (Dec. 19, 2025); *id.* Fed. Defs.' Reply, ECF No. 61 at 1, 3–8 (Mar. 3, 2026).

[6] For decades, NOAA Fisheries has used its general rulemaking authorities under the ESA and MMPA to issue regulations to prevent *incidental* take of other protected species to halt population declines and promote recovery. These regulations have closed areas to vessel traffic or certain fishing practices and have set vessel speed limits and approach distances to protect species such as manatees, humpbacks, sea turtles, orcas, and dolphins. *See* Ex. 3 ¶¶ 25–28 (Senatore Decl.).

The administration's unprecedented adoption of a new and very narrow interpretation of "take" under the ESA is additional evidence that Defendants may no longer adequately represent Conservation Groups' interests in defending the 2008 Rule from Plaintiff's statutory and constitutional challenges.

**LEGAL STANDARD**

Courts have granted intervention on subsequent motions based on additional evidence occurring after an earlier motion to intervene was denied. *See, e.g., In re N.Y.C. Policing During Summer 2020 Demonstrations*, No. 20-CV-8924 (CM)(GWG), 2022 WL 2045654, at *5 (S.D.N.Y. June 7, 2022) (granting renewed intervention motions based on subsequent development); *In re Puda Coal Sec. Inc. Litig.*, No. 11 CIV. 2598 (KBF), 2014 WL 12824302, at *1 (S.D.N.Y. Apr. 7, 2014) (vacating prior denial and granting motion to intervene on the basis of a "smoking gun" document that had been discovered); *Texas v. U.S. Dep't of Interior*, No. 25-50747, 2026 WL 2672757, at *7 (5th Cir. Sept. 11, 2026) (reversing district court's denial of a second motion to intervene, finding new developments made conservation organizations "aware of particular ways in which the Government's divergent interests had impacted the litigation" (citation modified)); *see also, e.g., Kane Cnty., Utah v. United States*, 928 F.3d 877, 890 (10th Cir. 2019) (reversing district court's denial of a second motion to intervene and recognizing a need to reevaluate intervention when circumstances change).

A district court must permit intervention under Federal Rule of Civil Procedure 24(a) when the movant: (1) submits a "timely" motion; (2) "show[s] an

interest in the action;" (3) "demonstrate[s] that the interest may be impaired by the disposition of the action;" and (4) "show[s] that the interest is not protected adequately by the parties to the action." *In re N.Y.C. Policing During Summer 2020 Demonstrations,* 27 F.4th 792, 799 (2d Cir. 2022); *MasterCard Intern. Inc. v. Visa Intern. Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006) (citing *United States v. Pitney Bowes, Inc*., 25 F.3d 66, 70 (2d Cir. 1994)).

This second motion is not foreclosed by the Court's prior ruling, as courts have the discretion to depart from prior decisions under circumstances like those present here. *See In re N.Y.C. Policing During Summer 2020 Demonstrations*, 2022 WL 2045654, at *4–*5 (finding renewed motions to intervene not foreclosed by the law of the case, which is a discretionary doctrine after a subsequent development); *see also In re Puda Coal Sec. Inc., Litig.*, 2014 WL 12824302, at *1 (vacating prior denial of motion to intervene under Rule 60(b)(2) due to newly discovered evidence that could not have been discovered in time to include in the motion); *contra Ransmeier v. Mariani*, 486 F. App'x 890, 892 (2d Cir. 2012) (denying renewed intervention that did not seek to cure the defect originally at issue).

## ARGUMENT

This Court already found Conservation Groups previously satisfied the first and second of the four intervention factors, ECF No. 42 at 7, 11. Conservation Groups now present significant new and timely evidence to address the next two factors. Defendants may not adequately represent Conservation Groups' interests in defending the 2008 Rule. In light of this new evidence, a final order from this Court

resolving Plaintiff's claims that "turn[] on the validity of the [Vessel] Speed Rule," ECF No. 42 at 11, would impair Conservation Groups' direct interests in the survival and recovery of right whales. A court order on the merits finding that the 2008 Rule is unlawful, as Plaintiff claims—or one endorsing a proposal to set the Rule aside prior to resolution on the merits, via voluntary motion or settlement agreement—would leave Conservation Groups with no recourse to challenge that outcome, unless they are granted party status here.

## I. CONSERVATION GROUPS ARE ENTITLED TO INTERVENE AS OF RIGHT

Conservation Groups are entitled to intervene as of right, because their motion is timely; they have direct, substantial, legally protectable interests at stake in this lawsuit; the outcome of Plaintiff's lawsuit may impair or impede their interests; and the existing parties may not adequately represent their interests.[7] *See* Fed. R. Civ. P. 24(a)(2).

### A. Conservation Groups' Second Motion is Timely

Conservation Groups' second motion to intervene is timely. To determine timeliness, courts weigh: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting

---

[7] While Conservation Groups need not demonstrate Article III standing to intervene, the attached and previously submitted declarations establish Conservation Groups' and their members' scientific, professional, recreational, and aesthetic interests in right whales sufficient to demonstrate standing. *See* Sakashita Decl. (Ex. 1); Mahoney Decl. (Ex. 2); Senatore Decl. (Ex. 3); Asmutis-Silvia Decl. (Ex. 4); Bartlett Decl. (ECF No. 20-2); Patek Decl. (ECF No. 20-4); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992); *Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency*, 542 F. Supp. 3d 232, 240 (S.D.N.Y. 2021).

from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Pitney Bowes, Inc.*, 25 F.3d at 70.

Here, Conservation Groups file this renewed motion within four weeks of the issuance of Executive Order 14430 on September 17, 2026. Since September 17, 2026, Conservation Groups have learned of this order, the president's signing statement, the Commerce press release, and NOAA's memo on ESA "take." *See MasterCard Int'l Inc.*, 471 F.3d at 390 (weighing "the length of time the applicant knew or should have known of [its] interest before making the motion"); *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182 (2d Cir. 2001) (reviewing timeliness from when intervenor should have realized that "its interests might not be adequately represented"); *Floyd v. City of New York*, 770 F.3d 1051, 1059 (2d Cir. 2014) (finding unions should have known that their interests diverged from the government's interests and might not be adequately represented).

At this early stage of the litigation, intervention will not prejudice the existing parties. Plaintiff filed an amended complaint on July 21, 2026, ECF No. 40 (Am. Compl.), Defendants filed an amended answer on August 4, 2026, ECF No. 41 (Am. Answer), and the parties have not yet begun merits briefing. *See* ECF No. 46 (Order Granting Ltr. Mot. and Setting/Resetting Deadlines); *see also Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 88 (S.D.N.Y. 2018) (collecting cases) (finding motion to intervene timely where summary judgment briefing had not begun and intervention did not alter court's case management order). Conservation Groups file

this second motion now to enable briefing on their intervention to be completed ahead of Defendants' first merits brief due December 23, 2026.[8] Conservation Groups are prepared to comply with the existing merits briefing schedule to avoid delay. *Id*. Should this Court deny intervention, however, Conservation Groups will suffer prejudice as they would be unable to defend the validity of the 2008 Vessel Speed Rule from an adverse outcome in this case.

Finally, the government's recent actions mean that these "unusual circumstances militat[e] for . . . a finding of timeliness." *In re Puda Coal Sec. Inc. Litig*., 2014 WL 12824302, at *1 (citing *MasterCard Int'l Inc.*, 471 F.3d at 389) (discovering a report which, had it been discovered earlier in proceedings, would have provided justification for intervention). The issuance of Executive Order 14430, the president's address, the Commerce press release, and the NOAA memo on ESA "take" present unusual circumstances.

The Fifth Circuit recently reviewed the timeliness of a renewed motion to intervene in a similar procedural posture and found intervenors timely filed their second motion where "they waited until they could establish that their interests diverged from those of the Government, as the district court had instructed them." *Texas v. Interior*, 2026 WL 2672757 at *6–7. Here, too, additional evidence demonstrating Defendants' and Conservation Groups' divergence of interests in the

[8] On the other hand, no prejudice will result if Conservation Groups are allowed to intervene after Plaintiff's opening merits brief is filed. Conservation Groups' participation presumably has no bearing on the statutory and constitutional arguments Plaintiff intends to assert.

2008 Rule has only recently come to light. *See* Ex. 1 and ¶ 20–24 (Sakashita Decl.); Ex. 2 ¶¶ 26–31 (Mahoney Decl.); Ex. 4 ¶¶ 42–45 (Asmutis-Silvia Decl.); *In re Puda Coal Sec. Inc. Litig.,* 2014 WL 12824302, at *1.

### B. Conservation Groups Have Substantial Interests at Stake

As this Court previously found, ECF No. 42 at 11, Conservation Groups have "direct, substantial, and legally protectable" interests in this proceeding. *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th at 799 (quotations and citations omitted); ECF No. 42 at 11. Nothing has changed to alter the conclusion that Conservation Groups' "interests relate directly to the subject of Plaintiff's claims" and that they "have satisfied the interest element of Rule 24(a)(2)." ECF No. 42 at 11; *see also* ECF No. 20 at 13–16 (citing ECF Nos. 20-1–20-6) (Mem. in Support of Mot. to Intervene) (describing Conservation Groups' substantial interests).

Conservation Groups continue to satisfy this requirement. Their members have protected interests in the right whale's survival and recovery, which are protected by the 2008 Rule that they worked to secure and improve. *See* Ex. 1 ¶¶ 4, 3–15 (Sakashita Decl.); Ex. 2 ¶¶ 5–7, 8–15, 21, 35–38 (Mahoney Decl.); Ex. 3 ¶¶ 5–9, 13, 15–21, 23–27 (Senatore Decl.); Ex. 4 ¶¶ 12–13, 14–27, 29, 37–41 (Asmutis-Silvia Decl.); *see also* ECF No. 20-2 ¶¶ 3–8, 9, 10 (Bartlett Decl.); ECF No. 20-4 ¶¶ 4–12 (Patek Decl.).

### C. The Disposition of This Case May Impair Conservation Groups' Ability to Protect Their Interests

An applicant for intervention as of right must be "so situated that without

intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest." *Pitney Bowes, Inc.*, 25 F.3d at 70; *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th at 799; Fed. R. Civ. P. 24(a)(2). A final order from this Court resolving claims that "turn[] on the validity of the [Vessel] Speed Rule" in Plaintiff's favor, ECF No. 42 at 11 (citing ECF No. 1, Compl. ¶ 46); *see* ECF No. 40 ¶ 46 (Am. Compl.) (same), would impair Conservation Groups' direct interest in the survival and recovery of right whales that the 2008 Rule protects. *See, e.g., Texas v. Interior*, 2026 WL 2672757, at *9.

This Circuit, and others, have recognized that impairment may be contingent on the outcome of litigation in situations like those presented here. For example, the Second Circuit concluded that a union's interest in officer safety may be impaired by litigation that could result in a determination "that NYPD policies governing the interaction of officers and protesters are unlawful and must be altered." *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th at 800. In reversing a district court's denial of environmental groups' second motion to intervene, the Fifth Circuit recently concluded that two environmental groups' "interest in the preservation of [an ESA] Listing Rule and its protections for the lesser prairie-chicken" may be impaired by an "adverse decision" that would end statutory protections the groups had worked to secure. *Texas v. Interior*, 2026 WL 2672757, at *9. The Tenth Circuit similarly concluded that a conservation group's interest in the preservation and enjoyment of lands may be impaired by "plaintiffs' stated objective" seeking to widen a road across those lands. *Kane Cnty., Utah*, 928

F.3d at 892 (reversing the denial of a second motion to intervene).

As in these instances, the disposition of this case may impair or impede Conservation Groups' ability to protect their interests in right whale conservation as a practical matter. *Pitney Bowes, Inc.*, 25 F.3d at 70; *see also* ECF No. 20 at 2, 16–17. If the Vessel Speed Rule is declared unlawful on statutory and/or constitutional grounds, ECF No. 42 at 11, and is vacated by the Court, or repealed in a subsequent rulemaking, right whales will be at increased risk from vessel strikes—one of the two primary threats to their survival and recovery.

"The reality is that [Conservation Groups] would at least find [themselves] waging an uphill battle" by a judgment in the defendant's favor—and, if not permitted to intervene, such "a determination" "would have been rendered without [their] involvement." *Certified Multi-Media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp. LLC*, No. 14-CV-5227 ADS SIL, 2015 WL 5676786, at *11–*12 (E.D.N.Y. Sep. 24, 2015) (citation modified) (granting intervention where, as a practical matter, proposed intervenor's interests would be impaired by a judgment in the defendant's favor).

If the Court finds the 2008 Vessel Speed Rule is based on statutory and/or constitutional infirmities and vacates it, *see* 5 U.S.C. 706(2) (reviewing court shall "hold unlawful *and set aside*" unlawful agency action) (emphasis added), as non-parties, Conservation Groups would have no recourse to appeal the decision to the Second Circuit. If the Court reaches the same conclusion but remands without vacatur, *see Natural Resources Defense Council v. U.S. EPA*, 808 F.3d 556, 584 (2d

Cir. 2015), Conservation Groups' interests are no more protected simply because Defendants might subsequently engage in APA notice-and-comment rulemaking on the Rule. Because it is the judiciary's, and not the agency's, sole responsibility to say what the law is, *Loper Bright v. Raimondo*, 603 U.S. 369, 392 (2024), Conservation Groups' view that the Rule is well within statutory and constitutional boundaries will carry little weight in that rulemaking. Because the claims Plaintiff asserts are purely legal, a ruling in this case directly affects Conservation Groups' interests in the Rule being found statutorily and constitutionally valid.

An adverse decision could also materially affect NOAA's ability to promulgate and defend other regulations that achieve the purposes of the ESA and MMPA, including those that reduce vessel strikes and other threats to other protected species, Ex. 3 ¶¶ 24–28 (Senatore Decl.), in which Conservation Groups have protected interests.

Separately, new evidence on this administration's hostility toward the Vessel Speed Rule specifically, and toward protecting endangered species generally, *see supra* Summary §§ I–II, raises the specter that Defendants may seek to resolve this case without notice and comment rulemaking prior to a merits decision by voluntarily moving for or by agreeing via settlement to remand and vacatur of the Rule. If Conservation Groups are denied intervention, they will lack party status to challenge any such motion or agreement. *See Microsystems Software, Inc. v. Scandinavia Online AB*, 226 F.3d 35, 39 (1st Cir. 2000) (citing *Marino v. Ortiz*, 484 U.S. 301, 304 (1998) (only parties to a civil action, including those who properly

become parties by intervention, may appeal from a final judgment).

To be clear, Conservation Groups file this second motion to intervene to have party status to defend their interests by opposing any motion for voluntary remand with vacatur or challenging any settlement agreement that accomplishes the same ends. They do not seek to intervene to demand the right to participate in settlement negotiations, should any occur. But should Defendants seek to short-circuit separate APA notice-and-comment rulemaking to implement their recent change in policy, Conservation Groups' interests in maintaining the 2008 Rule cannot be vindicated except by participating as parties. *Cf.* ECF No. 42 at 14–15 (finding Conservation Groups retained an outside avenue to protect their interest).

This administration has already demonstrated its willingness to vacate rules by voluntary motion for remand with vacatur or by settlement agreement prior to merits decisions. In *Texas v. Interior*, states and industry groups filed suit challenging the ESA listing of the lesser prairie-chicken during the prior administration. 2026 WL 2672757 at *3–*4. Following the change in administration in 2025, defendants abandoned their defense of the rule. *Id.* at *7. They moved for and were granted a voluntary remand with vacatur without any merits decision. *See* No. 7:23-cv-00047 (W.D. Tex.), ECF No. 87 (May 7, 2025) (motion for remand with vacatur), ECF No. 109 (Aug. 12, 2025) (granting motion). Subsequently, they published a notice withdrawing the lesser prairie-chicken listing rule without notice and comment. *See* 91 Fed. Reg. 9474 (Feb. 26, 2026). As cited above, the Fifth Circuit found the factors favor intervention and recently reversed as error the

district court's decision to deny conservation groups' second motion to intervene, filed shortly after those groups became aware of the parties' settlement negotiations. *Texas v. Interior*, 2026 WL 2672757, at *4.

In another state and industry group challenge to the ESA listing of the dunes sagebrush lizard filed during the Biden administration, following the change in administration, the defendants settled the lawsuit by entering into a court-ratified settlement agreement to vacate and remand the listing rule for reconsideration. *See State of Texas v. Interior*, No. 7:24-cv-00233 (W.D. Tex.), ECF No. 43 (June 3, 2026) (joint motion for settlement), ECF No. 48 (July 21, 2026) (granting motion and entering settlement agreement by order of the court). In that case as well, conservation groups sought to intervene twice and were denied twice. That denial is now on appeal. *Id*. No. 7:24-cv-00233 (W.D. Tex.), ECF No. 49 (Notice of Appeal).

### D. Conservation Groups' Interests May Not Be Adequately Represented by Any Existing Party

Recent events demonstrate that Conservation Groups have overcome any presumption of adequate representation. "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Where the proposed intervenor and an existing party have identical interests, adequate representation is presumed, and the proposed intervenor bears the burden of overcoming the presumption. *See Trbovich*, 404 U.S. at 538.

Conservation Groups' and Defendants' interests "significantly differ." *New*

*York Pub. Int. Rsch. Grp., Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (finding likelihood proposed intervenors will make a more vigorous presentation). In its earlier decision, this Court found that Conservation Groups did not identify sufficient evidence to demonstrate Defendants would decline to defend the 2008 Vessel Speed Rule, ECF No. 42 at 19. *Cf. Trbovich*, 404 U.S. at 538; *Butler*, 250 F.3d at 179. Since Conservation Groups' first motion, ECF No. 20 at 17–20, additional evidence has surfaced that demonstrates the divergence between Defendants' and Conservation Groups' interests. The government has not only stated its clear intent to reconsider the Vessel Speed Rule, ECF No. 20 at 2, 18–19, but has taken further action inimical to the Vessel Speed Rule. Executive Order 14430 directing the Commerce Secretary, "[w]ithin 30 days of the date of this order," to "take steps to initiate action to suspend, revise, or rescind regulations that overly burden boaters, anglers, and outdoor businesses," 91 Fed. Reg. at 60294, and the president's address announcing to boaters that the 2008 Vessel Speed Rule is over[9] make it clear, now more than ever, that Conservation Groups and Defendants lack the "same ultimate objective," *Butler,* 250 F.3d at 180, in protecting right whales from deadly vessel strikes via the 2008 Rule. *See also, e.g., Texas v. Interior*, 2026 WL 2672757 at *9 (finding that adversity of interest can be established by showing an intervenor's interests diverge from the putative representative interests in a manner germane to the case).

[9] The White House, *President Trump Participates in a Rose Garden Dinner, Sep. 17, 2026*, *supra* n.2.

Further, Defendants filed a court notice indicating that they are considering whether their arguments have changed in light of the Harm Rescission Rule adopting Justice Scalia's narrow interpretation of ESA "take," in a similar case challenging the legality of the 2008 Rule filed in the Middle District of Florida. "It is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973–74 (3d Cir. 1998) (finding government's actions in companion litigation gave "legitimate pause to [proposed intervenors'] confidence in adequate representation by the" government).

These recent actions provide additional persuasive evidence that Defendants may no longer "vigorously" defend the 2008 Rule. *Nat. Res. Def. Council, Inc. v. N.Y. State Dep't of Env't Conservation*, 834 F.2d 60, 62 (2d Cir. 1987). *See Texas v. Interior*, 2026 WL 2672757, at *10; *see also Certified Multi-Media Sols., Ltd.*, 2015 WL 5676786, at *13 (finding proposed intervenor's concern that the party lacks actual incentive to vigorously protect its interest sufficient). If permitted to intervene, Conservation Groups will vigorously defend their interests in ensuring the validity of the Rule and that the ESA and MMPA are robustly administered to fulfill Congress's mandates to prevent extinction and fully recover listed species. Conservation Groups' arguments will demonstrate that NOAA Fisheries appropriately promulgated the Rule under both the ESA and MMPA and in doing so acted well within constitutional bounds. *See also* ECF No. 20 at 6, 8 (recognizing that reducing vessel strikes are essential to right whale recovery and the

development of the vessel speed rule to protect right whales).

## II. ALTERNATIVELY, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION.

Alternatively, and considering this additional evidence, Conservation Groups again request leave to intervene under Federal Rule of Civil Procedure 24(b). "The court enjoys broad discretion in ruling on a motion for permissive intervention." ECF No. 42 at 10. Under Rule 24(b), a court may permit anyone to intervene whose motion is (1) "timely;" (2) "has a claim or defense that shares with the main action a common question of law or fact;" and (3) will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). The rule "is to be liberally constructed." *Olin Corp.*, 325 F.R.D. at 87. *See U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191–192 (2d Cir. 1978) (considering other factors including "whether the applicant will benefit by intervention").

This second motion is timely. *See supra* Argument § I.A. Conservation Groups continue to have a claim or defense that shares a common question of law or fact. ECF No. 42 at 21. Conservation Groups oppose Plaintiff's precise claims and requests for relief "because [Conservation Groups'] interest in the validity of the Rule turns on the same legal questions that must be resolved when Plaintiff's claims are decided by this Court," ECF No. 42 at 11. Fed. R. Civ. P. 24(b)(1)(B); *see* Proposed Answer at 21 (General Denial).

Conservation Groups' participation will not cause delay or prejudice any party. *See Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 88 (D. Conn. 2014) (finding addition of intervenors who moved at an early stage of the case and will abide by

the scheduling order would not cause prejudice); *335-7 LLC v. City of New York*, No. 20 CIV. 1053 (ER), 2020 WL 3100085, at *4 (S.D.N.Y. June 11, 2020) (same). Although Conservation Groups are four separate non-profit organizations, they have frequently litigated past cases as one, filing joint briefs, and intend to do so here. *See, e.g., Green v. Biden*, No. 24-CV-1975 (MKB), 2024 WL 4932751, at *7 (E.D.N.Y. Dec. 2, 2024) (granting conservation organizations permissive intervention and finding their "extensive familiarity with the factual and legal issues in this case weighs against Plaintiffs' argument that granting Proposed Intervenors' motion will cause inefficiencies"). Given Conservation Groups are willing to abide by the existing merits briefing schedule and will file a single opening and a single reply brief, their participation will have no adverse effects on the efficient adjudication of the case. *See, e.g., 335-7 LLC,* 2020 WL 3100085, at *4 (finding no "appreciable burden" to Plaintiff "having to respond to Proposed Intervenors' legal arguments, whose submissions as *amicus curiae* the Court otherwise undoubtedly would have received").

Permissive intervention is also warranted as Conservation Groups' unique perspectives will provide a complete and accurate presentation of the precedential issues at stake that implicate the public interest. *United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. 411, 419 (S.D.N.Y. 2018). Courts have granted permissive intervention in similar circumstances, including before a sister court. *See, e.g., Green v. Biden*, 2024 WL 4932751, at *6 (granting intervention to groups who have participated in nearly a decade of previous litigation related to issues before the

court and were "thus well-positioned to contribute a robust perspective on both the factual and legal issues in this case"). Considering their deep familiarity with the legal and factual background of the Vessel Speed Rule and right whale protection, as well as their expertise on other regulations implementing the ESA and MMPA premised on the same statutory authorities as the Vessel Speed Rule, Conservation Groups' participation will "provide this Court with a fuller picture" of the issues at stake in this litigation. *U.S. v. N.Y.C. Hous. Auth.*, 326 F.R.D. at 419; *see also Allco Fin. Ltd.*, 300 F.R.D. at 88.

## CONCLUSION

Conservation Groups respectfully request the Court grant their second motion to intervene as of right, or, in the alternative, permissively.

Respectfully submitted this 14th day of October, 2026,

*/s/ Erica A. Fuller*
Erica A. Fuller (*pro hac vice*)
Conservation Law Foundation
62 Summer St.
Boston, MA 02110
(617) 850-1727 (tel)
efuller@clf.org

*Counsel for Conservation Law Foundation*

*/s/ Jane P. Davenport*
Jane P. Davenport (*pro hac vice*)
Defenders of Wildlife
1130 17th St. NW,
Washington, DC 20036
(202) 682-9400 (tel)
jdavenport@defenders.org

*Counsel for Defenders of Wildlife*

*/s/ Kevin Cassidy*

Kevin Cassidy (*pro hac vice)*
Environmental Advocacy Clinic
Vermont Law and Graduate School
164 Chelsea St., P.O. Box 96
South Royalton, VT 05058
(781) 659-1696 (tel)
kcassidy@vermontlaw.edu

*Counsel for Whale and Dolphin Conservation, Inc.*

*/s/ Kristen Monsell*

Kristen Monsell* (*pro hac vice*)
Center for Biological Diversity
2100 Franklin St., Suite 375
Oakland, CA 94612
(510) 844-7137 (tel)
kmonsell@biologicaldiversity.org

*Counsel for Center for Biological Diversity*

**Application to appear pro hac vice forthcoming*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(c), I certify that this memorandum complies with the word-count limitations of Local Rule 7.1(c) because it contains 5,836 words as calculated by Microsoft Word, excluding the caption, tables, signature blocks, and this certificate.

Respectfully submitted this 14th day of October, 2026.

*/s/ Erica A. Fuller*
Erica A. Fuller