IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

**JOSEPH URBINATI, JR.**,

Plaintiff,

v.

**HOWARD LUTNICK**, in his official capacity as Secretary of the United States Department of Commerce; and **NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION**,

Defendants.

No. 26-cv-02884 (VSB) (RFT)

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO PROPOSED INTERVENORS' SECOND MOTION TO INTERVENE

## TABLE OF CONTENTS

Table of Authorities ..... iii
Introduction ..... 1
Argument ..... 2
I. Proposed Intervenors Are Not Entitled to Intervene as of Right ..... 2
A. Proposed Intervenors Have Not Shown Inadequate Representation or Rebutted the Strong Presumption of Adequacy ..... 2
(i) Proposed Intervenors Cannot Overcome Hooker ..... 4
(ii) Proposed Intervenors Cannot Overcome Butler's Lesser Presumption of Adequate Representation ..... 5
B. Proposed Intervenors Have Not Shown That Disposition of This Action Would Impair Their Interests ..... 8
C. Proposed Intervenors Have Not Established That Their Renewed Motion Is Timely ..... 10
(1) Delay ..... 11
(2) Prejudice to the Parties ..... 12
(3) Prejudice to the Movants ..... 13
(4) Unusual Circumstances ..... 13
II. The Court Should Again Deny Permissive Intervention ..... 15
A. The Renewed Motion Is Not Timely ..... 16
B. Nothing Warrants Disturbing the Court's Prior Denial of Permissive Intervention ..... 16
C. *Amici* Participation Remains the Appropriate Means of Presenting Proposed Intervenors' Perspective ..... 17
Conclusion ..... 18
Certificate of Compliance ..... 19
Certificate of Service ..... 20

## TABLE OF AUTHORITIES

### Cases

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
250 F.3d 171 (2d Cir. 2001) .... 2, 5, 11, 15

*Cameron v. EMW Women's Surgical Center, P.S.C.*,
595 U.S. 267 (2022) .... 11

*Eubanks v. Lutnick*,
No. 8:25-cv-00614 (M.D. Fla.) .... 1, 3, 8

*In re Puda Coal Securities Inc.*,
No. 11-civ-2598, 2014 U.S. Dist. LEXIS 49718 (S.D.N.Y. Apr. 7, 2014) .... 13–14

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
315 F.R.D. 170 (S.D.N.Y. 2016) .... 16

*Louis Berger Group, Inc. v. State Bank of India*,
802 F. Supp. 2d 482 (S.D.N.Y. 2011) .... 15

*MasterCard International Inc. v. Visa International Service Association, Inc.*,
471 F.3d 377 (2d Cir. 2006) .... 11

*NAACP v. New York*,
413 U.S. 345 (1973) .... 12, 16

*SEC v. Jarkesy*,
603 U.S. 109 (2024) .... 4

*Texas v. Department of the Interior*,
No. 25-50747, 2026 U.S. App. LEXIS 27963
(5th Cir. Sep. 11, 2026) .... 5, 10, 12–14

*United Airlines, Inc. v. McDonald*,
432 U.S. 385 (1977) .... 11

*United States v. City of New York*,
198 F.3d 360 (2d Cir. 1999) .... 9

*United States v. Hooker Chemicals & Plastics Corp.*,
749 F.2d 968 (2d Cir. 1984) .... 3–5, 15

*United States v. Pitney Bowes, Inc.*,
25 F.3d 66 (2d Cir. 1994) .... 16

*Washington Electric Cooperative, Inc. v. Massachusetts Municipal Wholesale Electric Co.*,
922 F.2d 92 (2d Cir. 1990) .... 2, 5, 8

### Rules

Fed. R. Civ. P. 24(a)(2) .... 2, 8, 10, 15

Fed. R. Civ. P. 24(b) .... 15

**Other Authorities**

Exec. Order No. 14,430, Restoring American Saltwater Angling and Recreation, 91 Fed. Reg. 60,293 (Sep. 22, 2026) .... 3, 6, 11

Harm Rescission Rule, 91 Fed. Reg. 43,300 (July 14, 2026) .... 7, 12

North Atlantic Right Whale Ship Strike Reduction Rule, 73 Fed. Reg. 60,173 (Oct. 10, 2008) .... 6

Press Release, U.S. Department of Commerce, President Trump Signs Landmark Executive Order Restoring American Saltwater Angling and Recreation (Sep. 17, 2026) .... 6

Proposed Amendments to the North Atlantic Right Whale Vessel Strike Reduction Rule, 87 Fed. Reg. 46,921 (Aug. 1, 2022) .... 6

## INTRODUCTION

The Court should deny Proposed Intervenors' renewed motion to intervene as of right because the developments they identify do not alter the two grounds on which the Court denied their first motion: the Intervenors have not shown that disposition of this case without their participation would impair their ability to protect their interests or that Defendants inadequately represent those interests. Dkt. No. 42 at 14–19. The Court also denied permissive intervention, finding that the Proposed Intervenors' participation would unnecessarily complicate and delay the proceedings and that allowing them to participate as *amici curiae* appropriately accommodates their interests. *Id.* at 22–24. The Court should again deny permissive intervention for those same reasons.

Proposed Intervenors now rely on a presidential executive order, public statements concerning vessel speed restrictions, an internal NOAA memorandum interpreting the Endangered Species Act's prohibition on taking protected species, and developments in *Eubanks v. Lutnick*, No. 8:25-cv-00614 (M.D. Fla.), a related challenge to the same Vessel Speed Rule. But none of these developments establishes that Defendants have abandoned their defense of the Rule or the civil penalty assessed against Plaintiff, or that they intend to concede any of Plaintiff's claims. Nor do these developments deprive Proposed Intervenors of the ability to challenge any future agency action affecting the Rule. The government's consideration of regulatory changes does not establish that it will decline to defend an existing regulation against Plaintiff's statutory and constitutional challenges.

Because the circumstances underlying the Court's prior ruling remain unchanged in every respect material to intervention, the renewed motion should be denied.

## ARGUMENT

### I. Proposed Intervenors Are Not Entitled to Intervene as of Right

Rule 24(a)(2) requires a timely motion, a legally protectable interest, practical impairment of that interest, and inadequate representation by the existing parties. *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec.*, 922 F.2d 92, 96 (2d Cir. 1990). All four requirements must be satisfied. *Id.*

Proposed Intervenors' renewed motion fails three of these requirements. The Court previously found that Proposed Intervenors possess a legally protectable interest but failed to establish practical impairment or inadequate representation. Dkt. No. 42 at 14–19. The developments underlying their renewed motion do not cure either defect, and their delay in raising the government's revised ESA interpretation also weighs against finding their renewed motion timely.

#### A. Proposed Intervenors Have Not Shown Inadequate Representation or Rebutted the Strong Presumption of Adequacy

A proposed intervenor must demonstrate that its interests are not adequately represented by an existing party. Fed. R. Civ. P. 24(a)(2). Where proposed intervenors share the same ultimate objective as Defendants, adequate representation is presumed, and the presumption must be overcome by "evidence of collusion, adversity of interest, nonfeasance, or incompetence." *Butler, Fitzgerald & Potter v. Sequa Corp.*,

250 F.3d 171, 179–80 (2d Cir. 2001). Where the government acts in its sovereign capacity "to redress quasi-sovereign interests, such as damage to the general economy or environment," an especially "strong affirmative showing" of inadequacy is required. *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 984, 987 (2d Cir. 1984). In those cases, "[a] minimal showing that the representation may be inadequate is not sufficient. The applicant for intervention must demonstrate that its interest is in fact different from that of the state and that that interest will not be represented by the state." *Id.* at 985.

Proposed Intervenors contend that recent events overcome any presumption of adequate representation. Dkt. No. 50 at 17. They point to (1) the government's stated intention to revisit the Vessel Speed Rule; (2) Executive Order 14430; (3) the President's remarks about vessel speed restrictions; (4) a Commerce Department press release; (5) NOAA's memorandum interpreting ESA "take"; and (6) the government's notice in *Eubanks*, a related challenge in the Middle District of Florida, that it is considering whether the rescission of the regulatory definition of "harm" affects its arguments. *Id.* at 18–19. From these developments, they infer that Defendants may no longer vigorously defend the Vessel Speed Rule and no longer share their objective of protecting right whales through it. *Id.* (citations omitted). But that inference concerns what Defendants might do, not what they have done in this litigation.

### (i) Proposed Intervenors Cannot Overcome *Hooker*

This case arises from NOAA's exercise of sovereign enforcement authority. Although Plaintiff initiated this judicial action, NOAA brought the underlying administrative proceeding, imposed a civil penalty, and now defends that decision. That posture implicates the sovereign-representation rationale in *Hooker*. *See Hooker*, 749 F.2d at 984. Administrative enforcement of public law seeks to "remedy a public harm" or "vindicate the public interest." *SEC v. Jarkesy*, 603 U.S. 109, 182 (2024) (Sotomayor, J., dissenting). Because Defendants are defending NOAA's exercise of that authority, *Hooker*'s heightened standard should apply, requiring Proposed Intervenors to make a "strong affirmative showing" of inadequate representation. 749 F.2d at 985.

Proposed Intervenors have not made that showing. The record contains no evidence of collusion, incompetence, or nonfeasance, and the asserted developments do not establish an actual divergence of litigation interests. Proposed Intervenors themselves describe a possible settlement as a "specter," characterize their interests as ones that "may not" be adequately represented, and acknowledge that Defendants are still "considering" whether their arguments have changed. *Compare* Dkt. No. 50 at 15 (raising the "specter" of a settlement); *id.* at 17 ("Conservation Groups' Interests May Not Be Adequately Represented"); *id.* at 19 (Defendants "are considering whether their arguments have changed" and "may no longer 'vigorously' defend the 2008 Rule"), *with Hooker*, 749 F.2d at 985 (requiring a showing that the proposed intervenor's interest is "in fact different" and "will not be represented" by the existing

parties). Indeed, more than three months have passed since the government publicly announced its revised interpretation of ESA "take" on July 14, 2026, yet Defendants have not raised settlement with Plaintiff, and Plaintiff does not expect one. Speculation about what Defendants might do does not satisfy *Hooker*'s requirement of a "strong affirmative showing" of inadequate representation. *Id.*

**(ii) Proposed Intervenors Cannot Overcome *Butler*'s Lesser Presumption of Adequate Representation**

Proposed Intervenors also fail under *Butler*'s presumption. The relevant question is not whether Proposed Intervenors and Defendants share every policy preference or reason for defending the Vessel Speed Rule. *Compare* Dkt. No. 50 at 18 (asserting that Proposed Intervenors and Defendants "lack the same ultimate objective in protecting right whales from deadly vessel strikes via the 2008 Rule"), *with* Dkt. No. 42 at 16 ("A different motive for litigating does not establish inadequate representation." (citation modified)). Rather, the question is whether their interests align on the particular issues before this Court. *See Wash. Elec.*, 922 F.2d at 98. Both seek to uphold the challenged enforcement action and defeat Plaintiff's challenge to the Rule's validity. Unlike the government in *Texas v. Department of the Interior*, which had taken affirmative steps to vacate the challenged agency rule, Defendants here have neither sought vacatur nor abandoned their defense of NOAA's enforcement action. No. 25-50747, 2026 U.S. App. LEXIS 27963, at *26 (5th Cir. Sep. 11, 2026). Accordingly, the presumption of adequate representation remains in place. *Butler*, 250 F.3d at 180.

Proposed Intervenors identify no evidence of collusion, nonfeasance, or incompetence. Nor have they established any adversity of interest. Defendants continue to defend Plaintiff's penalty, have not taken a litigation position adverse to Proposed Intervenors' interests, and are not engaged in settlement discussions with Plaintiff. The parties thus remain aligned in their objective of upholding the challenged enforcement action.

**Executive Order, Presidential Remarks, and Commerce Press Release.** Executive Order 14430 directs agencies to initiate future action concerning regulations that unduly burden boaters, anglers, and outdoor businesses. It does not identify the Vessel Speed Rule, require its rescission, or direct Defendants to concede any claim in this litigation. *See* 91 Fed. Reg. 60,294. The Commerce Department press release announces and characterizes the Order but does not prescribe a litigation position. *See* Press Release, U.S. Dep't of Com., *President Trump Signs Landmark Executive Order Restoring American Saltwater Angling and Recreation* (Sep. 17, 2026), https://www.commerce.gov/news/press-releases/2026/09/president-trump-signs-landmark-executive-order-restoring-american.

The President's remarks (Dkt. No. 50 at 4) attributed the speed restrictions of the Vessel Speed Rule to the Biden administration, which proposed—but never finalized—a substantial overhaul and expansion of the rule. *See* 87 Fed. Reg. 46,921 (Aug. 1, 2022). But the existing Vessel Speed Rule was promulgated in 2008 under the Bush administration. *See* 73 Fed. Reg. 60,173 (Oct. 10, 2008). The remarks therefore do not clearly address the existing rule, much less signal an intention to

abandon its defense. Furthermore, even assuming the President's colorful characterization of the Biden-era rulemaking extends to the existing rule, *see* Dkt. No. 50 at 4, his criticism concerns its *policy* merits, not its lawfulness. Nor does it establish that Defendants will abandon their defense of a penalty imposed under the existing Rule for past conduct. As the Court previously recognized, an administration's willingness to reconsider a regulation's economic costs does not establish that the government will decline to defend its claimed statutory and constitutional authority. Dkt. No. 42 at 19. Defendants have neither conceded Plaintiff's claims nor withdrawn any defense.

**The Harm Rescission Rule and NOAA's ESA "Take" Memorandum.** NOAA's memorandum applying the Harm Rescission Rule to accidental vessel strikes, *see* Dkt. No. 50 at 6, does not establish inadequate representation either. By construing the ESA's take prohibition to require "an affirmative act," 91 Fed. Reg. 43,300, 43,301 (citation modified), the Harm Rescission Rule excludes accidental vessel strikes from that prohibition. *See id.*; Dkt. No. 50 at 6. Plaintiff's position is that this forecloses any ESA basis for the Vessel Speed Rule—a merits question Plaintiff will address in due course. But a change in the government's interpretation of one statute does not establish that Defendants have abandoned their defense of the challenged enforcement action. The Rule also rests on asserted authority under the Marine Mammal Protection Act, which the Harm Rescission Rule and NOAA memorandum do not address. Nor have Defendants conceded that the revised ESA interpretation invalidates the Vessel Speed Rule or requires vacatur of Plaintiff's

penalty. Whatever its effect on the merits, Defendants continue defending the penalty assessed against Plaintiff for violating the Vessel Speed Rule.

**Defendants' *Eubanks* Notice.** The government's notice in *Eubanks v. Lutnick*, No. 8:25-cv-00614 (M.D. Fla.), states only that it is considering whether the rescission affects its arguments in that case. *See* Dkt. No. 50 at 19. That may lead Defendants to revise their ESA argument, but the notice does not withdraw any defense or concede any claim here. Nor does it resolve the Rule's separate asserted basis under the Marine Mammal Protection Act. The government's future position on either statute remains to be seen, but the present record does not show that it has abandoned its defense of Plaintiff's penalty.

### B. Proposed Intervenors Have Not Shown That Disposition of This Action Would Impair Their Interests

Rule 24(a)(2) requires a showing that disposition of the action without intervention may, as a practical matter, impair the movant's ability to protect its interest. Fed. R. Civ. P. 24(a)(2). That showing is weaker when the movant can protect the same interest through separate litigation. *See Wash. Elec. Coop.*, 922 F.2d at 98 (denying intervention where movants could bring their own lawsuit to vindicate their interests).

The Court has already held that Proposed Intervenors would not suffer the required impairment. Dkt. No. 42 at 14–15. It explained:

> Proposed Intervenors retain an avenue outside this action for protecting their interest. Should this Court rule for Plaintiff on his statutory claim and should NOAA subsequently revise or rescind the Rule, Proposed Intervenors may provide their input in the subsequent rulemaking

> process. If dissatisfied with the rulemaking outcome, they may bring their own action under the APA, as they have done in other cases.

*Id.* at 14 (citing, *inter alia*, *United States v. City of New York*, 198 F.3d 360, 366 (2d Cir. 1999)). That avenue is not merely theoretical: Proposed Intervenors have demonstrated both the capacity and willingness to challenge agency action affecting their asserted interests. And even if the Vessel Speed Rule is held ultra vires or unconstitutional in this action, the Court continued, "Proposed Intervenors would remain able to argue that this Court's constitutional analysis was mistaken or distinguishable; *the availability of that avenue is sufficient to defeat a showing of impairment*." *Id.* at 15 (emphasis added).

Proposed Intervenors offer two reasons why the Court should now find impairment. Neither is persuasive. First, they argue that vacatur or repeal of the Vessel Speed Rule would increase the risk of vessel strikes to right whales. Dkt. No. 50 at 14. But Plaintiff seeks to set aside the penalty imposed against him, not to vacate the Vessel Speed Rule. And any future repeal through rulemaking would afford Proposed Intervenors an opportunity to submit comments and, if necessary, bring an APA challenge. Dkt. No. 42 at 14. As the Court already concluded, those avenues are sufficient to defeat a showing of impairment. *Id.* at 15.

Second, Proposed Intervenors fear that Defendants may seek voluntary remand and vacatur, or agree to a settlement vacating the Rule, without notice-and-comment rulemaking or a merits decision. Dkt. No. 50 at 15–16. But Plaintiff has not requested vacatur of the Rule, the parties have not discussed settlement, and

Defendants have not sought remand or vacatur. The concern is therefore contingent on a future change in Defendants' litigation position. That distinguishes *Texas*, where the government had already sought vacatur of the challenged rule with the plaintiffs' agreement. 2026 U.S. App. LEXIS 27963, at *11, *26 (noting the government's "efforts to vacate the Listing Rule at issue in this litigation"). Proposed Intervenors' desire for party status to oppose a possible future settlement or litigation position does not establish that disposition of this case, on its present course, would impair their ability to protect their interests. Indeed, their stated purpose—"to intervene to have party status to defend their interests by opposing any motion for voluntary remand with vacatur or challenging any settlement agreement that accomplishes the same ends"—depends on a contingency that has not occurred. Dkt. No. 50 at 16.

The Court's prior impairment analysis therefore remains sound. Plaintiff does not seek vacatur of the Rule; Proposed Intervenors retain avenues to protect their interests outside this litigation; and the feared settlement or voluntary vacatur remains speculative. Unlike *Texas*, the government has not abandoned its defense of the challenged agency action or joined a request to vacate it. 2026 U.S. App. LEXIS 27963, at *11. The possibility that Defendants may change course later does not establish practical impairment now.

### C. Proposed Intervenors Have Not Established That Their Renewed Motion Is Timely

Rule 24(a)(2) requires a timely motion. Fed. R. Civ. P. 24(a)(2). The Court considers "how long the motion to intervene was delayed," prejudice to the existing

parties, prejudice to the movants if intervention is denied, and unusual circumstances bearing on timeliness. *Butler*, 250 F.3d at 182. These factors weigh against intervention here.

**(1) Delay.** The central timeliness inquiry is whether a proposed intervenor moved "'as soon as it became clear'" that its interests would "'no longer be protected'" by the existing parties. *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279–80 (2022) (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)). Timeliness is assessed in relation to when the asserted need to intervene arose. *Id.* at 280; *see also MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006).

Proposed Intervenors would measure timeliness from September 17, 2026, when the President issued Executive Order 14430 directing agencies to "initiate action" concerning "regulations that overly burden boaters, anglers, and outdoor businesses." Dkt. No. 50 at 3–4; Exec. Order No. 14,430, *Restoring American Saltwater Angling and Recreation*, 91 Fed. Reg. 60,293, 60,294 (Sep. 22, 2026). They also cite the President's accompanying remarks, a Commerce Department press release, and a NOAA memorandum addressing the ESA's prohibition on "take." Dkt. No. 50 at 3–6.

Of these developments, NOAA's memorandum most directly bears on a statutory basis for the Vessel Speed Rule. But the memorandum's conclusion—that an accidental vessel strike of a whale is not a prohibited "take" under the ESA—follows from the government's publicly announced interpretation months earlier.

Although Proposed Intervenors obtained the memorandum through a FOIA response on September 24, Dkt. No. 50 at 5 n.5, the government had already stated on July 14 that "take" under the ESA requires an "affirmative act . . . directed immediately and intentionally against a particular animal," rather than conduct that "indirectly and accidentally causes injury to a population of animals." 91 Fed. Reg. at 43,301 (citation modified). The NOAA memorandum applies that published interpretation to vessel strikes—it does not announce a new interpretation of the ESA.

Proposed Intervenors therefore were on notice of the government's revised ESA interpretation while their first intervention motion was still pending. *See* 91 Fed. Reg. 43,300, 43,301 (July 14, 2026); Dkt. No. 42 (Aug. 27, 2026). They did not bring the July rescission to the Court's attention before the August 27 denial. The September executive order and subsequent disclosure of the NOAA memorandum are later events, but neither establishes that Defendants have changed their litigation position in this case. The July interpretation cannot, by itself, justify treating the October 14 renewed motion as prompt. *Cf. NAACP v. New York*, 413 U.S. 345, 367 (1973) (considering when movants knew or should have known intervention was needed); *Texas*, 2026 U.S. App. LEXIS 27963, at *19 (finding prompt intervention after a particular divergence of interests became apparent).

**(2) Prejudice to the Parties.** Proposed Intervenors promise to follow the existing briefing schedule. Dkt. No. 50 at 11. But that promise does not eliminate the burden their renewed motion has already imposed. Responding to a second intervention motion has diverted Plaintiff's limited pro bono resources from merits

briefing and contributed to his request for an extension of the summary-judgment schedule, which the Court granted. *See* Dkt. No. 57. Raising the publicly announced ESA interpretation while the first motion remained pending could have reduced that disruption. The burden matters because Plaintiff has contested NOAA's penalty since September 2023 and remains subject to a substantial penalty while this case proceeds.

**(3) Prejudice to the Movants.** Denial of intervention would leave Proposed Intervenors with ample means of protecting their interests. In particular, Proposed Intervenors retain avenues outside this case to challenge any future revision or rescission of the Rule. *See* Section I.B, *supra*. Those considerations weigh against a finding of prejudice.

**(4) Unusual Circumstances.** Proposed Intervenors invoke the executive order, presidential remarks, Commerce Department press release, and internal NOAA memorandum as unusual circumstances supporting timeliness. Dkt. No. 50 at 11. They rely on *In re Puda Coal Securities Inc.*, No. 11-civ-2598, 2014 U.S. Dist. LEXIS 49718 (S.D.N.Y. Apr. 7, 2014), and *Texas v. Department of the Interior*, 2026 U.S. App. LEXIS 27963 (5th Cir. Sep. 11, 2026). Neither involved the circumstances presented here.

In *Puda Coal*, the court reconsidered an earlier intervention denial after the movant obtained a "smoking gun" document that could not have been discovered earlier through reasonable diligence because merits discovery had been stayed. 2014 U.S. Dist. LEXIS 49718, at *5–7. Here, the government's interpretation of ESA "take"

was publicly announced in July. *See* 91 Fed. Reg. at 43,301. The later NOAA memorandum straightforwardly applied that interpretation to accidental vessel strikes. It therefore does not present the kind of previously inaccessible, materially different evidence at issue in *Puda Coal*.

*Texas* involved a challenge to the ESA listing of the lesser prairie-chicken. 2026 U.S. App. LEXIS 27963, at *6–9. After the district court denied intervention to conservation organizations, including the Center for Biological Diversity, the government moved, with the plaintiffs' agreement, for voluntary remand and vacatur of the challenged listing rule. *Id.* at *10–11. Notwithstanding that development, the district court denied the conservation organizations' second motion to intervene. *Id.* at *12. But the Fifth Circuit reversed in light of the concrete divergence between the government and the proposed intervenors. *Id.* at *11, *22. No comparable development has occurred here. Defendants have not sought remand or vacatur, conceded Plaintiff's claims, or withdrawn their defense of the penalty. Proposed Intervenors instead speculate that Defendants might take such steps in the future. *See* Dkt. No. 50 at 15 (describing a "specter" of that outcome).

Thus, although the September developments are more recent than the July ESA rescission, they do not establish the kind of newly discovered evidence or actual change in litigation position present in *Puda Coal* or *Texas*. The timeliness inquiry should not obscure the more basic point: the renewed motion still fails to establish impairment or inadequate representation.

* * *

Proposed Intervenors have not established any basis for disturbing the Court's prior denial of intervention as of right. Defendants continue to defend NOAA's enforcement action, and speculation about a possible change in litigation position does not overcome *Butler*'s presumption of adequate representation, much less satisfy *Hooker*'s heightened standard, to the extent it applies. Nor have Proposed Intervenors shown that disposition of this action would impair their interests: Plaintiff seeks vacatur of his penalty, not the Vessel Speed Rule, and Proposed Intervenors retain avenues to challenge any future agency action affecting the Rule. Finally, the developments underlying their renewed motion do not establish a new divergence of litigation interests sufficient to justify intervention at this stage. Because Proposed Intervenors have failed to satisfy Rule 24(a)(2)'s requirements, their renewed motion to intervene as of right should be denied.

## II. The Court Should Again Deny Permissive Intervention

A proposed intervenor may secure permissive intervention under Rule 24(b) when it (1) files a timely motion and (2) asserts a claim or defense sharing a common question of law or fact with the main action, *provided that* (3) intervention will not unduly delay or prejudice the adjudication of the original parties' rights. *See Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 488 (S.D.N.Y. 2011).

The Court should again deny permissive intervention because, in addition to now being untimely, the developments identified by Proposed Intervenors do not undermine the Court's prior reasons for denying their request. Allowing four additional parties to intervene would unnecessarily complicate and delay the

proceedings, while participation as *amici curiae* already allows Proposed Intervenors to present their views without imposing the burdens of additional parties, filings, and appeals.

### A. The Renewed Motion Is Not Timely

Timeliness is evaluated under the same criteria whether intervention is sought as of right or permissively. *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 74 (2d Cir. 1994) (finding of untimeliness for intervention as of right "applies as well to permissive intervention"); *NAACP*, 413 U.S. at 365; *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 315 F.R.D. 170, 175 (S.D.N.Y. 2016). Proposed Intervenors' renewed request for permissive intervention is therefore untimely for the reasons set forth in Section I.C, *supra.*

### B. Nothing Warrants Disturbing the Court's Prior Denial of Permissive Intervention

The Court previously denied permissive intervention on three grounds: (1) "Defendants adequately represent Proposed Intervenors' interests in this litigation" (Dkt. No. 42 at 22); (2) "[t]he addition of Proposed Intervenors would not aid in the 'just and equitable adjudication' of the issues in this case" (*id.*) (citation omitted); and (3) "'allowing four additional organizational parties to intervene would unnecessarily complicate and prolong litigation.'" *Id.* at 23 (quoting Dkt. No. 32 at 19).

The "new" developments raised by Proposed Intervenors bear, at most, on the first and second grounds. But they alter neither the adequacy analysis, *see* Section I.A, *supra*, nor the Court's previous finding that the parties are "fully equipped to

provide the information necessary for the Court to consider the relevant statutes and facts of the case." Dkt. No. 42 at 23. Review remains confined to the same administrative record and the same statutory authorities the Court considered when it denied Proposed Intervenors' last motion. Furthermore, the intervening events Proposed Intervenors point to do not touch the third ground at all: adding four organizational parties would still complicate and delay this case just as it would have when the Court first denied intervention. Dkt. No. 42 at 23. While Proposed Intervenors promise to abide by the Parties' briefing schedule and file jointly, Dkt. No. 50 at 21, adding "four additional parties in this case would [nonetheless] lead to inefficiencies" by "inevitably complicat[ing] the proceedings and unnecessarily delay[ing] adjudication of a case that the existing Defendants can defend," and at this juncture, continue to defend. Dkt. No. 42 at 23.

### C. *Amici* Participation Remains the Appropriate Means of Presenting Proposed Intervenors' Perspective

Proposed Intervenors have not explained why participation as *amici curiae* is insufficient to present their expertise concerning the Vessel Speed Rule and right whale conservation. The Court has already authorized their participation as *amici*, finding that this approach "strikes an appropriate balance that respects Proposed Intervenors' interest in this litigation while also ensuring the efficient administration of this dispute." Dkt. No. 42 at 24.

The only additional benefit of party status that Proposed Intervenors identify is the ability to oppose a potential settlement or voluntary remand resulting in

vacatur of the Vessel Speed Rule. Dkt. No. 50 at 16. But Defendants have not sought such relief, the parties have not discussed settlement, and Plaintiff does not anticipate settlement discussions. Speculation that Defendants might change course does not justify intervention now.

## CONCLUSION

For the foregoing reasons, the Court should deny Proposed Intervenors' second motion to intervene.

DATED: October 30, 2026.

Respectfully submitted,

/s/ *Allison D. Daniel*
ALLISON D. DANIEL*
Ohio Bar No. 0096186
*Lead Counsel*
Charles M. Brandt*
DC Bar No. 90029325
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd.
Suite 1000
Arlington, Virginia 22201
Telephone: (202) 945-9524
ADaniel@pacificlegal.org
CBrandt@pacificlegal.org

*Attorneys for Plaintiff*
**Admitted Pro Hac Vice*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), I certify that this Memorandum of Law complies with the word count limitations because it contains 4,249 words.

/s/ *Allison D. Daniel*
ALLISON D. DANIEL

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2026, I served this document via the Court's electronic filing system to the Defendants and counsel for Proposed Intervenors:

Mollie Kornreich
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
mollie.kornreich@usdoj.gov

*Counsel for Defendants*

Erica A. Fuller
Conservation Law Foundation
62 Summer Street
Boston, MA 02110
efuller@clf.org

Jane P. Davenport
Defenders of Wildlife
1130 17th Street NW
Washington, DC 20036
jdavenport@defenders.org

Kevin M. Cassidy
Vermont Law & Graduate School
P.O. Box 96
164 Chelsea St.
South Royalton, VT 05068
kcassidy@vermontlaw.edu

Kristen Monsell
Center for Biological Diversity
2100 Franklin Street, Suite 375
Oakland, CA 94612
kmonsell@biologicaldiversity.org

*Counsel for Proposed Defendant-Intervenors*

/s/ *Allison D. Daniel*
ALLISON D. DANIEL